JOHNSON ET AL. *v.* SERBENTA ET AL.

[No. 19,863. Filed October 22, 1965. Rehearing denied December 7, 1965. Transfer denied July 13, 1967.]

*Kleiman, Cornfield & Feldman,* of Chicago, Illinois, *Chester, Clifford, Hoeppner & Houran,* of Valparaiso, and *Wagner & Malo,* of Hammond, all for appellants.

*Palmer C. Singleton, Jr.,* of Hammond, and *Fred C. Crumpacker,* of Valparaiso, both for appellees.

SMITH, J.—This is an action brought by William Serbenta, the appellee, for damages allegedly sustained by him as a result of a conspiracy to expel him from membership in Local Union 1206, United Steelworkers of America, AFL-CIO. Named in the complaint as defendants were various individuals as class representatives of the members of the International Union of the United Steelworkers of America, and Michael Ansich, Fred Hayes, Willie Carter, Henry Warmack, Kenneth Russell, Arthur Harris, Nelson Johnson, Dan White and Emery Albers in their individual capacities.

The substantive allegations of the complaint were that, pursuant to the alleged conspiracy, defendant Hayes filed fraudulent charges against the plaintiff with the Local Union; that a trial committee was appointed by the Local Union to try the plaintiff on Hayes' charges; that defendants Johnson, Russell, Carter and Albers served on the trial committee; that following a trial the plaintiff herein was found "not guilty" by the trial committee, however, the conspirators subsequently caused the verdict to be changed to "guilty"; that the Local Union adopted the recommendation of the trial committee that the plaintiff be suspended from the Union for a period of from five to seven years; and that following an appeal taken by the plaintiff, the Executive Board of the International Union reduced the penalty to suspension from the right to hold union office for a period of one year.

Before trial the cause of action againset defendants Warmack and Russell was dismissed on plaintiff's motion. At the conclusion of the presentation of the plaintiff's evidence the class actions against the members of the Local and International Unions were dismissed on defendant's motion. During the trial the cause of action against defendant Albers was dismissed on plaintiff's motion.

The case was submitted to the jury on a general verdict

and special interrogatories propounded by the defendants. The jury returned a verdict in favor of the plaintiff and against the individual defendants Ansich, White, Carter, Hayes, and Johnson in the sum of $22,500.00 and a verdict in favor of the defendant Harris and against the plaintiff. Upon the plaintiff remitting the sum of $10,500.00 of the amount of the verdict, the trial court entered judgment in the plaintiff's favor against the defendants, Ansich, White, Carter, Hayes and Johnson in the sum of $12,000.00.

The sole error assigned on appeal is the overruling of the motion for a new trial, one of the specifications of which is that the verdict is contrary to law asserting therein that the plaintiff-appellee's action is founded upon an alleged loss of wages resulting from his suspension from office by the local union; and that he cannot maintain an action at law for alleged damages because the Congress of the United States has preempted jurisdiction over the subject matter and has conferred it upon the National Labor Relations Board.

The appellants maintain that the decision is contrary to law because our state courts lack jurisdiction over the subject matter of this action. The Supreme Court of the United States in *San Diego Building Trades Council* v. *Garmon* (1959), 359 U. S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773 laid down the rule that, in the absence of an overriding state interest, state courts must defer to the exclusive jurisdiction of the National Labor Relations Board in cases in which the activity, that is the subject matter of the litigation, is "arguably subject" to the protections of section seven or the prohibitions of section eight of the National Labor Relations Act. This relinquishment of state jurisdiction the Court states, is essential ". . . if the danger of state interference with national policy is to be averted."

The issue in the case at bar and the first inquiry in any case in which a claim of federal preemption is raised must be whether the conduct complained of is "arguably subject" to the jurisdiction of the National Labor Relations Board.

In resolving this question we cannot escape the scope of the language employed by the Supreme Court in the *Garmon* case, *supra:*

> Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience. . . . . When the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the States from action. . . . When it is clear or may be fairly assumed that the activities which a State purports to regulate . . . constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. *To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.* (Emphasis supplied)

The possible exceptions to the rule laid down in the *Garmon* case are that a state court retains jurisdiction in a matter in which the state has an overriding interest. These are ,cases in which there is threat of violence or some other breach of the domestic peace. See, *International Union, U.A.A. & A.I.W., et al.* v. *Russell* (1958), 356 U.S. 634, 2 L. Ed. 2d 1030, 78 S. Ct. 932; *Youngdahl et al.* v. *Rainfair, Inc.* (1957), 355 U. S. 131, 2 L. Ed. 2d 151, 78 S. Ct. 206; or where the dispute is a breach of a contractual relationship. See, *Smith* v. *Evening News Ass'n.* (1962), 371 U.S. 195, 9 L. Ed. 2d 246, 83 S. Ct. 267.

In the case before us there is no issue of a breach of the domestic peace; and in light of the all encompassing nature of the Supreme Court's language as to what is "arguably subject" to the National Labor Relations Board's jurisdiction we feel ,compelled to discount the possibility of categorizing this litigation as a breach of contract between the appellee and the union whose officers and members allegedly conspired to oust the appellee from membership in the union.

The facts as alleged in the complaint are that the trial committee with the approval of the local union found that the appellants had conspired against the appellee in an effort to oust him as a member of the union and from holding any office in that union. In his complaint the appellee in paragraph twelve alleged:

" '12. That as a direct and proximate result of the acts and deeds of the defendants the plaintiff was removed from the office of Vice President of Local Union 1206 and did lose the salary paid to him as such officer; that the plaintiff was removed as Grievance Committeeman which caused his super-seniority to be abolished and caused him to suffer a reduction in wages because he was forced to accept a position paying less than the position he held by virtue of the super-seniority afforded a Grievance Chairman; that his reputation has been besmirched and slandered and he has been held up to ridicule and embarrassment in the community and has been shunned and avoided by former friends and acquaintances who fear to associate with plaintiff, that because of his wrongful exclusion from the union and the scorn to which he has been subjected to by the acts of the defendants, he has been refused advancement in his employment to positions of responsibility and higher earnings."

However, the court submitted instruction number six to the jury which reads as follows:

"I instruct you that there has been *no evidence introduced* in this case sufficient to sustain the following portion of rhetorical paragraph No. 12 of plaintiff's complaint which reads as follows, to wit: 'that his reputation has been besmirched and slandered and he has been held up to ridicule and embarrassment in the community and he has been shunned and avoided by former friends and acquaintances who fear to associate with plaintiff; that because of his wrongful exclusion from the union and the scorn to which he has been subjected to by the acts of the defendants, he has been refused advancement in his employment to positions of responsibility and higher earnings.' " (Emphasis supplied)

Because of this instruction the appellee's damages were therefore reduced to his loss of salary as a union officer; loss

of wages because of his removal as a grievance committee-man; and loss of his status of super-seniority afforded grievance committeemen. The appellee made no claim nor did he present any evidence based on his *injury to his rights as a member of the union* as such but only the loss of wages from his position as an officer in the union and his loss of super-seniority.

Therefore we are required to conclude that the litigation is based on a tort theory and not upon a contractual one which could be enforced by a state court according to the common law principles. Since it does not come within one of the exceptions to the *Garmon* rule we cannot say that the type of activity involved is not at least "arguably subject" to the prohibitions of the relevant provisions of the Taft-Hartley Act and therefore subject to the exclusive jurisdiction of the National Labor Relations Board.

In a recent case, which we believe is not unlike the case at bar, the Supreme Court of the United States applied the rule laid down in the *Garmon* case. In *Local No. 207, International Association of Bridge, Structural and Ornamental Iron Workers Union et al.* v. *Perko* (1963), 373 U. S. 701, 10 L. Ed. 2d 646, 83 S. Ct. 1429, reh. den. 375 U.S. 872, 11 L. Ed. 2d 101, 84 S. Ct. 27, the Supreme Court held that a state court lacked jurisdiction of a foreman's suit against the union for tortious acts in obtaining his discharge because he had ordered boilermakers to perform certain work which the iron-workers claimed was to be performed by them. The court stated that the litigation fell within the National Labor Relations Board's jurisdiction to deal with this matter and as a consequence the state's jurisdiction was preempted. The Court reasoned that the Board in their expertise might conclude that the foreman was not a "supervisor" excluded from the protection of the act and therefore the union would be guilty of an unfair labor practice under the relevant provisions of the act. On the other hand the court stated that even if the Board found that the fore-

man was a supervisor, the local's action in securing his discharge for failure to comply with the union rules might violate another relevant provision of the act because it would tend to coerce non-supervisory employees into observing those those rules or because it may tend to coerce the employer in the selection of his representatives for collective bargaining or the adjustment of grievances.

In the instant case the activity complained of was that the union, acting through its officers and certain individual members, wrongfully expelled the appellee from membership in the union because the appellee allegedly violated a union rule against one member contacting management to secure the discharge of a fellow employee.

It may reasonably be contended that the National Labor Relations Board, equipped with their specialized investigatory procedures and staffed with experts trained in labor-management problems after a proper inquiry into the facts, may have found that the appellant's conduct was not an unfair labor practice; and that the appellee was guilty of violating one of the internal rules of the union. On the other hand the Board may have found from the vastly conflicting evidence that there was a conspiracy to oust the appellee and, with the special remedial sections of the Taft-Hartley Act at their disposal ordered the reinstatement of the appellee.

We believe that the appellee has relied erroneously upon *International Association of Machinists et al.* v. *Gonzales* (1958), 356 U. S. 617, 2 L. Ed. 2d 1018, 78 S. Ct. 923, which case was decided prior to the *Garmon* case. In that case the Supreme Court sustained the jurisdiction of a state court which had ordered a reinstatement of a plaintiff who had alleged a wrongful expulsion from the union. However, the *Gonzales* case can be distinguished from the *Garmon* case in that in the former case the union member based his cause of action on damages to his union-member contract which we have previously stated is left to the states to enforce according to common law principles of contract law. Such is not the case

before us and we believe that the *Gonzales* case is not controlling.

It therefore appears to this Court that this litigation is "arguably subject" to the jurisdiction of the National Labor Relations Board which is, as we understand the *Garmon* rule and the latter decision in the *Perko* case, *supra*, all that is required to preempt state jurisdiction from entertaining this cause of action.

We therefore hold that the decision and judgment of the Court below is contrary to law in that it conflicts with the clear mandate of Congress as is enunciated in the *Garmon* case and that for this reason this cause is hereby reversed.

Reversed.

Bierly, C.J. and Hunter, J., concur.

Mote, J., concurs in result only.

NOTE.—Reported in 210 N. E. 2d 861.