DIETZ CONSTRUCTION COMPANY, Respondent, v. LOCAL 2351, CARPENTERS UNION, AFL, being the Wisconsin River Valley District Council, Appellant.

*No. 274. Argued May 8, 1969.—Decided June 6, 1969.*
(Also reported in 168 N. W. 2d 289.)

For the appellant there was a brief and oral argument by *Roy T. Traynor* of Wausau.

For the respondent there was a brief by *O'Melia & Kaye* and *William A. Melby,* all of Rhinelander, and oral argument by *Mr. Melby.*

ROBERT W. HANSEN, J. An initial issue is whether state court injunctive relief is available on this record. Put differently, the issue presents itself as to whether or not the National Labor Relations Act, as amended, preempts the controversy here involved so as to preclude a state court from granting injunctive relief. In resolving this issue, it is to the decisions of the United States Supreme Court in this area that we must look. They are controlling. The doctrine of federal preemption in certain management—labor union controversies rests on congressional enactments and on United States Supreme Court interpretations thereof.

*The Vogt Case.*

Plaintiff stresses and the trial court relied heavily upon the *Vogt Case* [1] and understandably so because this case arose in Wisconsin and on appeal the United States Supreme Court found that state court action was not preempted by federal statutes.

In this case the plaintiff operated a gravel pit in the town of Oconomowoc and was engaged in the business of producing and selling washed sand and gravel and ready-mixed concrete. Union pickets were stationed at the

---

[1] *Vogt, Inc. v. International Brotherhood* (1956), 270 Wis. 315, 71 N. W. 2d 359, 74 N. W. 2d 749, affirmed, 354 U. S. 284, 77 Sup. Ct. 1166, 1 L. Ed. 2d 1347. In the trial court decision reference is also made, primarily because of a similarity in facts, to *Door County v. Plumbers, etc., Local No. 298* (1958), 4 Wis. 2d 142, 89 N. W. 2d 920. However, this case was reversed by the U. S. Supreme Court, 359 U. S. 354, 79 Sup. Ct. 844, 3 L. Ed. 2d 872, on the ground that the dispute involved primarily contracts subject to the Labor Management Relations Act.

gravel pit entrance, a location not frequented by the general public. The pickets carried signs stating that men on the job were not 100 percent affiliated with the AFL. Truckdrivers hauling materials refused to cross the picket line. On rehearing, this court upheld a trial court injunction against such picketing.

In affirming the Wisconsin court holding, the United States Supreme Court reviewed previous cases to find ". . . a broad field in which a state, in enforcing some public policy, . . . could constitutionally enjoin peaceful picketing . . ." The state court's inference from the facts that ". . . the picketing was to coerce the employer to put pressure on his employees to join the union in violation of the declared policy of the state" was upheld. The provisions of sec. 8 of the National Labor Relations Act were parenthetically noted as "a declaration of similar congressional policy" but no point is made of possible federal preemption by such specific congressional enactment.

Defendant points out certain facts to distinguish *Vogt* from the case before us. It also points out that the then existing prohibition against all-union agreements had not yet been qualified by the 1961 amendment to sec. 111.06 (1) (c) 1, Stats., which authorized the formation of all-union agreements in the building and construction industry.[2] So what was an illegal purpose at the time of *Vogt* is, under certain circumstances, not illegal now. With due regard to these and other variances, the *Vogt* decision is much in point. However, we see the present issue as to whether *Vogt* today still has the broad sweep its language suggests, or whether its applicability has been narrowed by subsequent decisions spelling out the concept of federal preemption and defining where it is to apply. Such subsequent decisions must be analyzed to determine how wide an area of federal preemption has been carved out by the United States Supreme Court and

---

[2] Ch. 124, Laws of 1961.

whether the controversy before us falls into such pre-empted area.

*The Garmon Case.*

In one such subsequent decision, the nation's highest tribunal spelled out the particular circumstances under which a state court is preempted and in which initial jurisdiction is exclusively granted to the National Labor Relations Board. That case was *San Diego Unions v. Garmon.*[3] Wisconsin has recognized *Garmon* as an authoritative pronouncement on the issue of federal preemption.[4]

In *Garmon* the rule as to when the state is preempted or precluded from acting is stated thusly:

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by sec. 7 of the National Labor Relations Act, or constitute an unfair labor practice under sec. 8, due regard for the federal enactment requires that state jurisdiction must yield." [5]

The *Garmon* decision makes only two exceptions to this rule of preemption: (1) Where the activity regulated is ". . . a merely peripheral concern of the Labor Management Relations Act" [6] and (2) in a situation

". . . where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." [7]

---

[3] *San Diego Unions v. Garmon* (1959), 359 U. S. 236, 79 Sup. Ct. 773, 3 L. Ed. 2d 775.

[4] *See Local 248 UAW v. Natzke* (1967), 36 Wis. 2d 237, 153 N. W. 2d 602; *Walker Manufacturing Co. v. Industrial Comm.* (1965), 27 Wis. 2d 669, 135 N. W. 2d 307; *Tully v. Fred Olson Motor Service Co.* (1965), 27 Wis. 2d 476, 134 N. W. 2d 393; *Moreland Corp. v. Retail Store Employees Union* (1962), 16 Wis. 2d 499, 114 N. W. 2d 876.

[5] *Garmon, supra,* footnote 3, at page 244.

[6] *Id.* at page 243.

[7] *Id.* at page 244.

*The Curry Case.*

The high court followed the *Garmon* ruling in a subsequent case where the fact situation is quite similar to the case before us. That occurred in the *Curry Case.*[8]

In *Curry,* the union picketed a construction site, giving as its reason the substandard wages paid by the general contractor to his employees. The presence of the picket caused other employees, members of building trades unions, to walk off the jobsite. This walk-off slowed the pace of construction and diminished the general contractor's ability to finish the construction job in the time allotted by the construction contract. The contractor asserted that the picketing was to coerce him into hiring union labor in contravention of the Georgia right-to-work statute.

The Georgia Supreme Court, reversing the trial court, held that a trial court injunction should have been granted to enjoin the picketing of the jobsite. The United States Supreme Court reversed, holding that the petition and court findings in the Georgia case made out an arguable violation of sec. 8 (b) of the National Labor Relations Act and removed the situation from one in which state injunctive relief could be granted.

*The Vaca Case.*

The most recent pronouncement of the high court on the issue of preemption in this area of the law is the *Vaca Case.*[9]

Citing *Garmon,* the opinion of the United States Supreme Court in *Vaca* stated:

"Consequently, as a general rule, neither state nor federal courts have jurisdiction over suits directly involving 'activity [which] is arguably subject to sec. 7 or sec. 8 of the Act.'" [10]

---

[8] *Construction Laborers v. Curry* (1963), 371 U. S. 542, 83 Sup. Ct. 531, 9 L. Ed. 2d 514.

[9] *Vaca v. Sipes* (1967), 386 U. S. 171, 87 Sup. Ct. 903, 17 L. Ed. 2d 842.

[10] *Id.* at page 179.

In *Vaca* the high court also summarized situations in which it had earlier held that the state was not preempted either because the activity regulated was of peripheral concern of the NLRB or touched interests deeply rooted in local responsibility. Such situations were capsulized as "libel," [11] "violence," [12] "wrongful expulsion from union membership," [13] and "mass picketing." [14]

The decision makes clear that ". . . these exceptions in no way undermine the vitality of the preemption rule where applicable, . . ." [15] and that ". . . they demonstrate that the decision to preempt federal and state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies of concurrent judicial and administrative remedies." [16]

The court went on to give the rationale or reason for the doctrine of preemption stating:

" 'Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal . . . Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce in-

---

[11] *Id.* at page 180, citing *Linn v. Plant Guard Workers* (1966), 383 U. S. 53, 86 Sup. Ct. 657, 15 L. Ed. 2d 582.

[12] *Id.* at page 180, citing *Automobile Workers v. Russell* (1958), 356 U. S. 634, 78 Sup. Ct. 932, 2 L. Ed. 2d 1030.

[13] *Id.* at page 180, citing *Machinists v. Gonzales* (1958), 356 U. S. 617, 78 Sup. Ct. 923, 2 L. Ed. 2d 1018.

[14] *Id.* at page 180, citing *Allen-Bradley Local v. Wisconsin Employment Relations Board* (1942), 315 U. S. 740, 62 Sup. Ct. 820, 86 L. Ed. 1154.

[15] *Id.* at page 180.

[16] *Id.* at page 180.

compatible or conflicting adjudications as are different rules of substantive law.' " [17]

Reasonable men might differ with this interpretation of congressional intent as well as with the summary of beneficent by-products of NLRB primacy in the areas involved. However, the rule of *Garmon*, reiterated in *Curry* and explained in *Vaca*, is the law of the land and the sole issue before us is whether the case before us comes within the area of NLRB preemption they establish.

*Sections 7 and 8.*

So the nature of the controversy between the contractor and carpenters council, or at least the nature of that controversy as each party views it, must be analyzed. If the activities enjoined by the court relate to and are protected by sec. 7 of the National Labor Relations Act, state jurisdiction must yield. Or, if the activities enjoined by the court relate to and are prohibited practice under sec. 8 of the National Labor Relations Act, the right of the state to act, at least initially, must yield. Is the activity here involved either so protected by sec. 7 or so prohibited by sec. 8.

*Plaintiff's claim.*

The nature of the activity complained of, from the standpoint of the plaintiff, is made crystal clear in the affidavit submitted in support of the request for a temporary injunction. That affidavit, in pertinent part, alleges ". . . that the purpose of the picketing was to induce and compel plaintiff's employees to join respondents' union against their will and to force plaintiff to compel its employees to unionize against their will . . ." This statement in plaintiff's affidavit closely parallels the language of sec. 8 (b) (7) of the National

---

[17] *Id.* at page 179, citing *Garner v. Teamsters Union* (1953), 346 U. S. 485, 490, 491, 74 Sup. Ct. 161, 98 L. Ed. 228.

Labor Relations Act, prohibiting picketing any employer where an object is:

". . . forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees . . ."

The position of plaintiff goes beyond arguably identifying defendant's activity with prohibited activity under sec. 8 (b) (7). It does exactly that in almost the exact wording of the section.

*Defendant's claim.*

The nature of the activity, as claimed by the defendant, is entirely different. Defendant union at the hearing conceded that it was making no attempt to organize the plaintiff's employees. Defendant's counsel went further to state that no "labor dispute" existed, and in the sense of a dispute between an employer and his employees that is apparently true.[18] The position of the defendant union is that its members have the right to advertise the fact that a particular employer maintains substandard work conditions or pays substandard wages. That the union bases this claim of right to picket for informational purposes on the free speech protections of the first amendment, as interpreted in recent decisions

---

[18] Actually, as the National Labor Relations Act defines the term, a "labor dispute" does exist if the plaintiff's affidavit at all describes the activity complained of. Sec. 2 (9) NLRA provides: "The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether the disputants stand in the proximate relation of employer and employee.*" (Emphasis supplied.) Whether a narrower definition of the term "labor dispute" is involved in sec. 14 (c) (2), making existence of such dispute a prerequisite of state jurisdiction, is not material on the issue of preemption.

of the majority of the present United States Supreme Court [19] is not before us on the question of preemption. It is the nature of the activity, not whether it is constitutionally protected, with which we deal now. The defendant union, constitutional issues put aside, contends it has the right to take such action, *i.e.,* informational picketing, for the mutual benefit of its members. Such activity arguably would come within the employees' right, set forth in sec. 7 of the National Labor Relations Act, providing "Employees shall have the right to self-organization, to form, join, or assist labor organizations, . . . and *to engage in other concerted activities for* the purpose of collective bargaining or other *mutual aid or protection . . . .*" (Emphasis supplied.) Additionally, the defendant union's claim of right to informational picketing may arguably be a claim of exemption from the prohibition of sec. 8 (b) (7) under subparagraph (C) in part providing:

". . . nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services."

If it is argued that the walk-off of the masons puts the activity within the exception to the exception, making it a prohibited, not a protected activity, the activity would nonetheless remain within the scope of jurisdiction of the National Labor Relations Board. Whether ap-

[19] *See Gregory v. Chicago* (1969), 394 U. S. 111, 89 Sup. Ct. 946, 22 L. Ed. 2d 134; *Shuttlesworth v. Birmingham* (1969), 394 U. S. 147, 89 Sup. Ct. 935, 22 L. Ed. 2d 162; *Cox v. Louisiana* (1965), 379 U. S. 536, 85 Sup. Ct. 453, 13 L. Ed. 2d 471; *Fields v. South Carolina* (1963), 375 U. S. 44, 84 Sup. Ct. 149, 11 L. Ed. 2d 107; and *Edwards v. South Carolina* (1963), 372 U. S. 229, 83 Sup. Ct. 680, 9 L. Ed. 2d 697.

proached from the point of view of plaintiff or defendant, it appears clear and fairly to be assumed that the controversy here involves activity which is either protected or prohibited under sections 7 and 8 of the National Labor Relations Board. This fact and finding compels the conclusion that the matter is within the purview of the National Labor Relations Act. It follows that state and federal courts must yield, at least initially, to the NLRB. The field is a preempted one.

It should be added that the record here does not indicate in any way the existence of issues of local concern other than those identical to the federal interest evidenced by sec. 7 and sec. 8 (b) (7) of the NLRA. There is neither allegation nor showing that any other interest or right is or may be involved. The record, viewed as a whole, including the testimony at the hearing, place the matter completely within the purview of secs. 7 and 8 (b) (7). So the state is preempted.

Plaintiff contends that it ought not be required to show on a petition for injunctive relief, temporary or permanent, that the matter is not arguably within the purview of the National Labor Relations Act or that the board would decline to assert jurisdiction under sec. 14 (c). However, these are not roadblocks erected by or removable by this court. The affidavit of plaintiff and testimony on behalf of plaintiff at the hearing clearly place this controversy in the preempted category. Unless facts are presented on which a "proper determination" can be made, the case is one within the purview of the NLRB and a case for state court injunctive relief has not been made out. We did not create the necessities of the situation, but we do recognize them and apply them.

The finding that the state court was without jurisdiction to grant injunctive relief, the controversy being federally preempted, makes it unnecessary to deal with other issues raised on this appeal.

*By the Court.*—Order reversed with directions to the trial court to dismiss the petition.