**CARPENTERS LOCAL UNION NO. 1016 and Allan Bramlett, Appellants–Defendants,**

v.

**J & D HERNLY CONSTRUCTION CO., Appellee–Plaintiff.**

No. 18A05–9104–CV–130.

Court of Appeals of Indiana,
Fifth District.

Dec. 2, 1991.

William R. Groth, Neil E. Gath, Fillenwarth, Dennerline, Groth & Baird, Indianapolis, for appellants-defendants.

Peter H. Drumm, Noel L. Pooler, Benadum, Cecil, Drumm & Pooler, Muncie, for appellee-plaintiff.

SHARPNACK, Judge.

Carpenters Local Union No. 1016 and Allan Bramlett individually ("Carpenters") appeal from a court order temporarily enjoining them from engaging in any picketing activities at or near a construction site run by J & D Hernly Construction Company ("Hernly Construction"). We reverse.

Carpenters raise three issues for review, however we address only the following dispositive issue:

Whether the trial court had jurisdiction to enter an injunction.

The city of Muncie hired Hernly Construction to pour concrete walks and steps and install outdoor lighting on a job site in Tuhey Park. After Hernly Construction began work at the site, Carpenters approached Joe Hernly, a partner in Hernly Construction, and indicated that they wanted the company's employees to join their union. Shortly thereafter, Carpenters began picketing the job site. The picketing interfered with the delivery of cement to the job site because all of the local cement companies' employees refused to cross the picket line. The picketing was conducted in a peaceful manner. It is unclear exactly what the picket signs said, but they apparently stated that Hernly did not have a union contract. (Record, 89)

On April 10, 1991, Hernly Construction filed a complaint for a preliminary and permanent injunction against Carpenters "from picketing, or from loitering, grouping, or collecting at or near the site or at

any approaches on public streets leading to [the site]."[1] The trial court issued a temporary restraining order on the same day. On April 12, the trial court sentenced Bramlett to serve three days in jail for contempt of court. Following a hearing on April 19, at which Joe Hernly and two of his employees testified, the trial court issued an order temporarily enjoining Carpenters from "directly *or indirectly,* interfering with plaintiff in picketing, loitering, grouping or collecting at or near the Tuhey Park construction site...." (Record, 45–46)

The trial court issued the following relevant findings in support of its order:

"7. That other Union member suppliers have refused to make deliveries to the Tuhey Park job site because of the presence of the picketing;

8. That it is a matter of common knowledge that the objective of picketing is to impair the business of an employer until it is forced to yield to the demands of the pickets;

9. That the defendant Union, by picketing the job site, is attempting to compel plaintiff Hernly to unlawfully force his employees to join a Union;

10. It is the public policy of this State that the individual unorganized worker shall be free to decline or accept Union membership and no employer has the right to require an employee to join or refrain from joining a labor Union;

11. That because of this unlawful picketing, the plaintiff has suffered damages and will continue to suffer irreparable injury if said picketing were to continue[.]"

(Record, 45)

Carpenters assert that the trial court's jurisdiction in this case was pre-empted under the doctrine expressed in *San Diego Building and Trades Council v. Garmon* (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. In that landmark ruling, the Court held that, in enacting federal labor laws,

Congress intended that matters of national labor policy be decided in the first instance by the National Labor Relations Board (NLRB). To that end, the court stated:

When it is clear or may fairly be assumed that the activities which a state purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield.

359 U.S. at 244, 79 S.Ct. at 779, 3 L.Ed.2d at 782. The primary rationale behind the rule announced in *Garmon* is "the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose." *Vaca v. Sipes* (1967), 386 U.S. 171, 180–181, 87 S.Ct. 903, 912, 17 L.Ed.2d 842, 852.

State courts need not yield jurisdiction on every question that arguably implicates federal labor laws. The *Garmon* decision itself recognized an exception to the rule where the state has a compelling interest in maintaining the domestic peace in cases marked by violence and immediate threats to the public order. *Garmon,* 359 U.S. at 247, 79 S.Ct. at 781, 3 L.Ed.2d at 784. Other conduct that is so deeply rooted in local law that courts should not assume Congress intended to pre-empt the application of state law include: cases containing allegations of false and malicious statements injurious to one's reputation, which are actionable under state law, even if such statements were themselves unfair labor practices; and state law actions for intentional infliction of emotional distress, even though a major part of the state cause of action consists of conduct that is arguably an unfair labor practice. *Belknap Inc. v. Hale* (1983), 463 U.S. 491, 509–510, 103 S.Ct. 3172, 3182–3183, 77 L.Ed.2d 798, 814.

A critical inquiry in applying *Garmon* pre-emption is whether the controversy

---

1. The complaint also sought to enjoin Carpenters from interfering with Hernly's employees, agents or anyone seeking to enter or leave the work site and from aiding anyone else in doing so. However, Hernly presented no evidence that Carpenters had done any of those things except by the means of picketing.

presented to the state court is identical to that which could be presented to the NLRB. *Belknap*, 463 U.S. at 51C, 103 S.Ct. at 3183, 77 L.Ed.2d at 814 (citing *Sears Roebuck & Co. v. Carpenters* (1978), 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209); *Communication Workers Local 5900 v. Bridgett* (1987), Ind.App., 512 N.E.2d 195. In *Belknap,* employees went out on strike when bargaining reached an impasse. The employer responded by unilaterally granting a wage increase for all employees remaining on the job. The union filed unfair labor practice charges with the NLRB based upon the unilateral wage increase. The employer hired replacement workers and assured them that they were being hired on a permanent basis. However, the employer subsequently reached a settlement with the strikers and laid off the replacement workers to accommodate the returning strikers. The replacement workers filed suit in state court to recover damages for misrepresentation and breach of contract. 463 U.S. at 494, 103 S.Ct. at 3174–3175, 77 L.Ed.2d at 804. The Court noted that the facts suggested that the strike might have been termed an unfair labor practice strike, and that as such, it would have been a violation of federal law to discharge the strikers. However, it was the discharged replacement workers, not the strikers, who sought relief for the employer's misrepresentations. The maintenance of the misrepresentation action would not interfere with the Board's determination of matters within its jurisdiction, and therefore the action was of no more than peripheral concern to the Board and federal law. 463 U.S. at 511, 103 S.Ct. at 3183, 77 L.Ed.2d at 814. At the same time, the state had a substantial interest in protecting its citizens from misrepresentations causing grievous harm, and the state's interests outweighed any possible interference with the Board's function which might result from permitting the action for misrepresentation to proceed. *Id. See also Sears, Roebuck & Co. v. San Diego County District Council of Carpenters* (1978), 436 U.S. 180, 198, 98 S.Ct. 1745, 1758, 56 L.Ed.2d 209, 226 (Court found no pre-emption where the state court cause of action

was trespass and concerned the location of the pickets whereas the question that would have been before the NLRB in an unfair labor practice proceeding would focus on the objective of the picketing.)

In the case before us, the conduct sought to be regulated is neither of only peripheral concern to federal labor law nor so deeply rooted in local law that we may assume that Congress did not intend to pre-empt the application of state law. Unlike *Belknap* and *Sears, Roebuck*, the controversy presented to the trial court was virtually identical to that which would be presented to the NLRB.

Section 7 of the National Labor Relations Act (NLRA) provides:

> "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title."

29 U.S.C.A. § 157 (West 1991).

> Section 8(b)(3) of the NLRA provides:
> "It shall be an unfair labor practice for a labor organization or its agents—
>
> \*    \*    \*    \*    \*    \*
>
> (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section...."

29 U.S.C.A. § 158(b)(3) (West 1991). Section 8(a)(3) provides:

> "It shall be an unfair labor practice for an employer—
>
> \*    \*    \*    \*    \*    \*
>
> (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization...."

29 U.S.C.A. § 158(a)(3). Section 8(b) also provides that it shall be an unfair labor practice,

"(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

\*    \*    \*    \*    \*    \*

(C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided,* That when such a petition has been filed the Board shall forthwith, ... direct an election ...: *Provided further,* That nothing in this subparagraph shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this subsection."

29 U.S.C.A. § 158(b)(7) (West, 1991) (emphasis in original).

Here, the two potentially conflicting sources of regulation—the trial court's equitable powers and the NLRA—are "brought to bear on precisely the same conduct." *Sears, Roebuck,* 436 U.S. at 194, 98 S.Ct. at 1756, 56 L.Ed.2d at 223. The purpose and manner of the picketing are the essence of Hernly's complaint. Both Hernly Construction and the trial court relied upon Carpenters' alleged improper objective of compelling Hernly to unlawfully force his employees to join the union. This is prohibited by § 8(b)(2). *Garner v. Teamsters, Local 776* (1953), 346 U.S. 485, 488–489, 74 S.Ct. 161, 165, 98 L.Ed. 228, 238–239.

In *Garner,* a state court, pursuant to a state statute, enjoined a union from picketing an employer where it found that the purpose was to coerce the employer into compelling its employees to join the union. 346 U.S. at 487, 74 S.Ct. at 164, 98 L.Ed. at 237. The Court found that Congress had addressed that particular type of controversy and had forbidden unions to exert certain types of coercion on employees through the medium of the employer, citing § 8(b)(2), and held that the state court was precluded from intervening in such a case. 346 U.S. at 501, 74 S.Ct. at 171, 98 L.Ed. at 245. *Garner* is essentially like the case before us. Even if, as argued by Carpenters, § 8(f)[2] exempted their actions from the prohibition of § 8(b)(2), those actions were either organizational or informational picketing governed by § 8(b)(7).

The courts of this state recognize and apply the *Garmon* pre-emption doctrine. *Communication Workers Local 5900 v. Bridgett* (1987), Ind.App., 512 N.E.2d 195

---

**2.** Section 8(f) provides:

(f) It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members ... because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement, or (2) such agreement requires as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment or the effective date of the agreement, whichever is later....

29 U.S.C.A. 158(f) (West 1991).

(recognizing pre-emption doctrine but holding that it was not applicable where the defense asserted by employees in union's action to collect fines was not identical to one that could be brought before the NLRB); *Johnson v. Serbenta* (1965), 141 Ind.App. 347, 210 N.E.2d 861. Furthermore, our holding is supported by decisions in other jurisdictions. *United Maintenance and Manufacturing Co., Inc. v. United Steel Workers of America* (1974), 157 W.Va. 788, 204 S.E.2d 76; *Dietz Construction Co., Inc. v. Local 2351, Carpenters Union* (1969), 43 Wis.2d 189, 168 N.W.2d 289.

Hernly's reliance on *International Brotherhood of Teamsters v. Vogt* (1957), 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347 is misplaced. In that case, which was decided before *Garmon*, the Court addressed the question of the extent to which the equal protection clause of the fourteenth amendment limited the power of a state to enjoin picketing. The Court held that a Wisconsin court had permissibly enjoined a labor union from picketing pursuant to a state statute prohibiting picketing in the absence of a "labor dispute." 354 U.S. at 294-295, 77 S.Ct. at 1171-1172, 1 L.Ed.2d at 1354. The trial court had found that the union was attempting to coerce the employer to pressure its employees to join a union in violation of the state's declared policy. *Id.*

*Vogt* stands for the proposition that the first amendment, as applied to the states through the fourteenth amendment, does not prohibit state regulation of peaceful picketing where that regulation is in furtherance of a state's domestic policy and it does not curtail free speech in its accepted scope. *Id.* *Vogt* did not address the question of Congressional intent to pre-empt state law and state court jurisdiction through federal labor law. *See Dietz* 43 Wis.2d at 194, 168 N.W.2d at 291 (distinguishing *Vogt* along similar lines).

Likewise, Hernly's reliance on *Merit Steel Co. v. International Association of Bridge, Structural & Ornamental Ironworkers Local 395* (N.D.Ind.1988), 684 F.Supp. 1007 is also misplaced. In *Merit*,

the district court remanded the case to state court because it found that plaintiff employer's amended complaint did not state a federal cause of action. The court found that the amended complaint claimed only that the violent and unlawful character of the activities of the union picketers, not the presence of the picketers, caused it harm, and that the complaint was intended to support a claim under Indiana's Anti-Injunction Act, not federal labor law. *Id.* at 1010. The court did not address any claim of pre-emption. Even if the court had addressed a *Garmon* pre-emption claim, the complaint specifically alleged violent conduct which falls outside the scope of *Garmon* pre-emption. Hernly specifically admitted that the picketing in this case was peaceful.

For the reasons stated above, we find that the trial court did not have jurisdiction to issue an injunction in this case, and we reverse and remand for dissolution of the injunction and further proceedings consistent with this opinion.

REVERSED AND REMANDED.

BUCHANAN and RUCKER, JJ., concur.

