Alphonsus (Al) MITCHELL, Formerly d/b/a Mitchell Electric, Plaintiff-Appellant,

v.

Richard SHERMAN, Sherman Electric Service, Inc., Charles Boley and Local Union #953, International Brotherhood of Electrical Workers, Defendants-Respondents.

Court of Appeals

*No. 94–0373. Submitted on briefs August 17, 1994.—Decided September 7, 1994.*

(Also reported in 523 N.W.2d 738.)

389

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Kay Nord Hunt* and *Thomas R. Jacobson* of *Lommen, Nelson, Cole & Stageberg, P.A.* of Minneapolis.

On behalf of the defendants-respondents, Charles Boley and Local 953, International Brotherhood of Electrical Workers, the cause was submitted on the brief of *Marianne Goldstein Robbins* and *Renata Krawczyk* of *Previant, Goldberg, Uelmen, Gratz, Miler & Brueggeman, S.C.* of Milwaukee.

On behalf of the defendants-respondents, Richard Sherman and Sherman Electric Service, Inc., the cause was submitted on the brief of *Christine A. Gimber* of *Dernbach & Koehn, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Alphonsus (Al) Mitchell, formerly Mitchell Electric, appeals a summary judgment dis-

missing his complaints against Local Union #953, International Brotherhood of Electric Workers. The trial court found Local Union #953's activities were arguably subject to § 7 or § 8 of the National Labor Relations Act (NLRA), *see* 29 U.S.C.A. §§ 157 and 158, thereby preempting state law. Second, the trial court also granted partial summary judgment on certain counts in favor of Charles Boley, Richard Sherman and Sherman Electric Service, Inc., based on the premise that their actions were under the rubric of § 7 of the NLRA as well. Mitchell contends that actions against Local Union #953, Boley, Sherman and Sherman Electric are not preempted by the NLRA and that the trial court has jurisdiction.

We conclude that Local Union 953's and Boley's actions and activities are protected by the NLRA, and therefore state law is preempted. However, we conclude that Sherman's and Sherman Electric's activities are not protected by the NLRA, therefore state law applies. Thus, we affirm the trial court's judgment as to Local Union #953 and Boley and reverse the trial court's judgment as to Sherman and Sherman Electric.

## FACTS

Mitchell owned and operated a small nonunion electrical shop in the Hudson area which staffed five electricians, including Boley. Boley had worked for Mitchell Electric for approximately five years and was delegated a modicum of responsibility in his position. Planning to retire, Mitchell attempted to sell his business as a going concern. An appraisal from a certified public accounting firm indicated that Mitchell's business was worth $200,000; $50,000 worth of equipment and $150,000 appraised as the firm's goodwill.

Sherman, the corporate president of Sherman Electric, began researching the purchase of Mitchell Electric. Sherman Electric is a union contractor, employing approximately thirty electricians and based in Eau Claire. Boley was also interested in buying the business and discussed the purchase price with his employer, Mitchell. The other party to this action, Local Union #953, represents electrical workers in western Wisconsin, including the Hudson area. The union was engaged in organizing efforts to unionize electricians in the Hudson area, including Mitchell Electric.

Boley contacted the union and expressed an interest in joining. Sherman, Boley and representatives of Local Union #953 met regarding the possibility of Sherman doing business in the Hudson area, as well as Local Union #953 soliciting and organizing the electricians. At a later meeting with Sherman and the union representatives, two of Boley's co-workers from Mitchell attended. Eventually, Boley and these two co-workers joined the union, left the employment of Mitchell Electric and began working for Sherman Electric in the Hudson area. Boley became the sub-foreman and managed Sherman Electric's Hudson shop. His activities included soliciting potential customers.

After the three employees left Mitchell, the value of the business declined. The loss of staff members forced the company to relinquish projects at a loss. Furthermore, it was unable to procure replacement workers. Because of the lack of staff, Mitchell's volume of business and ability to serve customers declined. Mitchell eventually sold Mitchell Electric through a business broker. Hanson Electric purchased the business for $25,000, $175,000 less than the original asking price.

Mitchell initially filed suit against Boley, Sherman and Sherman Electric. Boley brought a third-party complaint against Local Union #953. Consequently, Mitchell amended his complaint, filing suit against Local Union #953. The union, via a stipulation and order for substitution of attorneys, took up Boley's defense.

In its amended complaint, Mitchell alleged four counts against the defendants: (1) All four defendants interfered with his existing and prospective contractual relationships with his employees and customers; (2) Boley breached his fiduciary duty to Mitchell and the other parties assisted in this breach; (3) Boley, Sherman and Sherman Electric wrongfully and willfully misappropriated business and trade secrets in violation of common-law and the Uniform Trade Secrets Act; and (4) all defendants willfully and maliciously injured the plaintiff in his trade, business and profession, violating § 134.01, STATS.

The defendants brought motions for summary judgment, taking the position that under federal labor law they have protected rights to solicit and organize union membership, and that Mitchell cannot pursue state actions against them. In a November 1993, memorandum decision, the trial court granted summary judgment to Local Union #953 on all counts finding that the lawsuit was preempted because the union's activities were arguably subject to § 7 or § 8 of the NLRA. The trial court concluded that it did not have jurisdiction over Mitchell's claims against Local Union #953.

As to the other parties, in count one, the trial court found material issues of fact as to the intentional interference with Mitchell's existing and prospective contractual and business relationships by Boley and

Sherman Electric, but not Sherman. However, the court granted summary judgment to Boley, Sherman and Sherman Electric as to the intentional interference with Mitchell's employee contracts, finding that such activity was arguably protected by § 7 of the NLRA.

In count two, the trial court denied the motion for summary judgment, finding that triable issues of fact existed regarding Boley's alleged breach of fiduciary duty and whether Sherman and Sherman Electric assisted in the alleged breach. In count three, summary judgment was granted to Boley, Sherman and Sherman Electric, due to lack of evidence that any of the information Boley had taken was a trade secret under § 134.90(1)(c), STATS. Last, the trial court granted summary judgment to Boley, Sherman and Sherman Electric on the conspiracy count because the activities at issue were arguably protected by § 7 of the NLRA and thus preempted by federal law.

Mitchell appeals the dismissal of Local Union #953 from this lawsuit, as well as the counts dismissed against Boley, Sherman and Sherman Electric, which were founded on federal preemption grounds. Accordingly, the issue we address is whether Mitchell's causes of action against Local Union #953, Boley, Sherman and Sherman Electric for intentional interference with Mitchell's employee contracts and conspiracy to wilfully and maliciously injure Mitchell's trade, business and profession are preempted by the NLRA.

## DISCUSSION

This court applies the same summary judgment standards as the circuit court, pursuant to § 802.08(2), STATS. *Bell v. County of Milwaukee*, 134 Wis. 2d 25, 30, 396 N.W.2d 328, 330 (1986). Summary judgment is

appropriate when there are no issues of material fact and only a question of law is presented. *Id.* Facts, inferences and conclusions are resolved in favor of the non-moving party, in this instance Mitchell. *Ford Farms, Ltd. v. Wisconsin Elec. Power Co.,* 145 Wis. 2d 650, 654-55, 430 N.W.2d 94, 95-96 (Ct. App. 1988). Furthermore, the question of whether a claim implicates federal law and is therefore subject to preemption is one of law, thus no deference is owed to the circuit court's determination. *International Machinist Ass'n Local 437 v. United States Can Co.,* 150 Wis. 2d 479, 487, 441 N.W.2d 710, 713 (1989). Discerning preemption issues is contingent upon federal law as stated by the United States Supreme Court and other federal courts. *Id.*

The starting point of analyzing federal preemption in this situation is *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236 (1959). In *Garmon,* the United States Supreme Court set the boundaries of preemption by the NLRA of state courts exercising jurisdiction in tort related labor disputes. In articulating the rule for federal labor law preemption, the United States Supreme Court explained:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law . . . .
>
>     . . . .
>
> . . . When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts

must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

*Garmon,* 359 U.S. at 244-45.

The Wisconsin Supreme Court interpreted the *Garmon* holding as two-pronged: (1) If the conduct at issue is clearly protected by § 7 of the NLRA, or clearly prohibited by § 8 of the NLRA, the states are totally preempted from all jurisdiction and (2) If the conduct is not clearly protected or prohibited, the state and federal courts are required to defer to the NLRB if the conduct is arguably protected by § 7 or prohibited by § 8. *Arena v. Lincoln Lutheran,* 149 Wis. 2d 35, 48, 437 N.W.2d 538, 544 (1989).

Section 7 of the NLRA (29 U.S.C.A. § 157) protects the rights of employees in relation to organizing, forming or joining a labor organization, collective bargaining and other activities connected with labor organizations.[1] Section 8 of the NLRA (29 U.S.C.A. § 158) regulates unfair labor practices. Generally, § 8(a) finds certain activities by employers as unfair labor practices. Section 8(b) declares certain activities by labor organizations and its agents as unfair labor practices.

---

[1] 29 U.S.C.A. § 157 (1973) states:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

There are two exceptions to the general preemption rule set forth in *Garmon*. First, states have the power to regulate activities that are merely peripheral to federal labor law. *Id.* at 243. Second, states have jurisdiction of conduct which touches interests so deeply rooted in local feeling that Congress has not specifically decided to legislate. *Id.* at 244.

> In determining whether these exceptions apply to a given case, the state's interest in remedying the effects of the challenged conduct must be balanced against both the interference with the National Labor Relations Board's (NLRB) ability to adjudicate the controversy and the risk that the state will approve conduct that the NLRA prohibits.

*Kolentus v. Avco Corp.*, 798 F.2d 949, 961 (7th Cir. 1986). Also, the party opposing preemption bears the burden of proof that an exception to the preemption principle applies. *Donald T. Clarkin & Lumber, Inc. v. Dingeldein*, 107 Wis. 2d 373, 375-76, 320 N.W.2d 40, 41-42 (Ct. App. 1982).

Furthermore, the party asserting preemption must make an affirmative showing that their activities are arguably protected under the NLRA. *International Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 394-95 (1986). "If the word 'arguably' is to mean anything, it must mean that the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in his favor." *Id.* at 395. However, the evidence does not have to be conclusive, but enough to enable the trial court in finding that the NLRB could reasonably sustain a claim based on the parties' interpretation. *Id.*

398

## CLAIMS AGAINST LOCAL UNION #953 AND BOLEY

Addressing the issue of Local Union #953's and Boley's involvement, the question is whether their activities in attempting to organize the Hudson area are protected under the NLRA. Mitchell asserts their activities were tortious interference with Mitchell's employment contracts and conspiracy to injure his business, both state tort actions.

Generally, courts have held that state claims for tortious interference with contractual rights are preempted. In *Local No. 207 Iron Workers Union v. Perko,* 373 U.S. 701, 707 (1963), the Supreme Court found a common-law action of wrongful discharge was preempted. In *Local 926 Int'l Union of Oper. Eng. v. Jones,* 460 U.S. 669, 678 (1983), the Supreme Court found the claim of an employee alleging union interference with an employment contract was preempted by federal law. A fifth circuit case held that tortious interference claims arising from a strike were preempted by the NLRA. *Mobile Mech. Contr. Ass'n v. Carlough,* 664 F.2d 481, 487 (5th Cir. 1981).

Although the factual situations in these cases are not completely on point, the law is instructive. Local Union #953 and Boley were involved in an organizing effort in the Hudson area. Meeting with Mitchell's employees was part of this organizing effort. Mitchell claims the union's and Boley's activities interfered with his contractual relationship with his employees. These actions, however, are not within the rubric of state law. As shown by the above cases, states are not allowed to impose tort liability for conduct protected by § 7 of the NLRA.

Mitchell also asserts that these activities constitute conspiracy to injure his business under § 134.01, STATS. Activities that constitute union organizing do not necessarily implicate conspiracy. "The earlier notion that union activity was a species of 'conspiracy' . . . was replaced by an unequivocal national declaration of policy establishing the legitimacy of labor unionization and encouraging the practice of collective bargaining." *Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters,* 436 U.S. 180, 190 (1978) (footnote omitted).

Also, a number of courts have found that nonviolent, business related tort claims are preempted. *See, e.g., Connell Constr. Co. v. Plumbers & Steam. Local Union No. 100,* 421 U.S. 616, 635-36 (1975) (state antitrust claims are preempted); *Hennepin Broadcasting Assocs. v. NLRB,* 408 F. Supp. 932, 937 (D. Minn. 1975) (private damages actions in business relationship preempted). The rationale for this rule is "that business torts do not raise significant enough state concerns for the state tort law to survive preemption." *Palm Beach Co. v. Journeymen's & Prod. Allied Servs.,* 519 F. Supp. 705, 714 (S.D.N.Y. 1981) (picketing activities preempted). The activities engaged in by the union and Boley are the basis of an allegation of a business tort claims. Consequently, these actions are within the jurisdiction of the NLRB, not the state courts.

Mitchell also argues that the union's and Boley's conduct is unlawful or otherwise improper or, in the alternative, that it falls within one of the *Garmon* exceptions. Mitchell asserts that the union and Boley coerced his employees in its organizing drive, which led

to their consequent changing of employers. Citing *Boeing Airplane Co. v. NLRB,* 238 F.2d 188 (9th Cir. 1956),[2] Mitchell contends that Boley's and the union's actions should not be protected under § 7 of the NLRA because the actions were disloyal. In *Boeing,* an employee was unwilling to give up activities as a Boeing agent while he was seeking to have Boeing's engineers employed by the competition. The court found the employee's activities so egregious as to fall within the classification of violence, physical sabotage, wildcat strike and damage to business, which are not protected under federal labor law because they are unlawful acts. *Id.* at 193. However, an eleventh circuit case held that an employee's actions of distributing employment applications for a competitor on the union's behalf were not disloyal and were a protected union activity. *NLRB v. Technicolor Gov't Servs., Inc.,* 795 F.2d 916, 917-18 (11th Cir. 1986). The question of whether Boley's and the union's activities were disloyal or illegal is analogous to these cases. It is our determination that Boley and the union's activities of soliciting new union members were not so egregious or disloyal as to leave them unprotected by § 7 of the NLRA.

■■■

Additionally, Mitchell's assertions that their activities fall within the *Garmon* exceptions is without merit. The first exception involves activities that are merely peripheral to federal labor law. In this instance, the union's activities involved organizing and soliciting union members. These activities, which are regulated under § 7 of the NLRA, are the central focus of this section. As § 7 sets forth: "Employees shall have the

---

[2] We note that this decision took place three years prior to the *Garmon* decision, which set the parameters for federal preemption in this area.

right to self-organization, to form, join, or assist labor organizations . . . ." Consequently, these activities are not peripheral to federal labor law and thus do not fall under this exception.

The second exception involves claims that are deeply rooted in local feeling and responsibility. Such situations may include libel, violence, wrongful expulsion from union membership and mass picketing. *Dietz Constr. Co. v. Local 2351 Carpenters Union,* 43 Wis. 2d 189, 197, 168 N.W.2d 289, 292 (1969). From the activities reflected in the record, none of these situations or similarly related ones were apparent in the union's or Boley's activities. Thus, the second exception is not applicable.

Union organizing activities may have the side effect of injuring employers. It is impossible to separate the union conduct regulated by the NLRA from the fact that potential injury may be caused by the very same activity. The solicitation and unionization efforts by Local Union #953 and Boley were part of their organizational drive to unionize the Hudson area. Unions have a federally protected right to organize, and state tort liability cannot interfere with this federally mandated right.

Furthermore, we cannot assert a view on the substantive questions underlying the claims. It is our duty to discern whether the subject matter of this lawsuit arguably comes within the NLRB's jurisdiction, not whether the union or Boley violated the Act. *See Perko,* 373 U.S. at 708. We conclude the union's and Boley's actions were within the NLRB's jurisdiction and therefore the state claims are preempted.

Because we have determined that § 7 is dispositive, we need not discuss the analysis under § 8 of the

NLRA. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

## BOLEY'S STATUS AS EMPLOYEE

Section 7 of the NLRA provides for employees to engage in union activities. However, the Act expressly excludes "supervisors" from the definition. *Florida Power & Light Co. v. International Broth. of Elec. Wkrs.,* 417 U.S. 790, 809 (1974); 29 U.S.C.A. § 152(3). "Congress excluded supervisors from the protection afforded rank-and-file employees who engage in concerted activity for their mutual benefit." *Arena,* 149 Wis. 2d at 53, 437 N.W.2d at 546. Therefore, supervisors do not have a remedy under the NLRA. *Id.* Mitchell asserts that Boley's former position at Mitchell Electric was as a supervisor and therefore he is not protected by § 7 of the Act. We disagree.

The definitions of employee and supervisor are in the Act itself. 29 U.S.C.A. § 152(3) and (11). Section 152(11) defines supervisor as those individuals who direct the work of others in a nonroutine manner.[3] Case law reflects that low level employees with modest supervisory authority are not supervisors within the meaning of the Act. *NLRB v. Res-Care, Inc.,* 705 F.2d 1461, 1466 (7th Cir. 1983). Assigning routine tasks

---

[3] 29 U.S.C.A. § 152 (11) (1973) states:

The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

does not elevate an employee to supervisor. *NLRB v. First Union Mgmt.,* 777 F.2d 330, 335 (6th Cir. 1985). *First Union Mgmt.* delineates criteria that constitutes supervisory authority including scheduling, disciplining employees, setting pay rates, granting vacations or overtime and promoting employees. *Id.*

Boley was never designated a supervisor or project manager at Mitchell Electric. Furthermore, Mitchell testified that he considered his son, Tom Mitchell, to be the shop and project manager. Boley did not have supervisory powers such as assigning duties; responsibility for employee performance; hiring, firing or evaluating employees; granting overtime or days off or ordering supplies. The record evidences that Boley was not a supervisor under the Act. Therefore, his conduct in organizing for Local Union #953 is arguably protected under the NLRA.

### CLAIMS AGAINST SHERMAN AND SHERMAN ELECTRIC

Mitchell asserts that § 7 of the NLRA does not protect the activity of Sherman and Sherman Electric due to the fact that employers' activities are not protected. We agree.

Section 7 of the NLRA protects the rights of employees to organize and the rights of labor organizations to assist in this effort. This section does not protect any activities of an employer. *Retail Clerks Union Local 770 v. NLRB,* 370 F.2d 205, 208 (9th Cir. 1966). Neither Sherman nor Sherman Electric can claim status as an employee or labor organization in order to be protected by the NLRA. Sherman's and Sherman Electric's activities are neither within § 7 nor arguably within § 7. Additionally, outside of providing

this court with an overview of preemption law and the NLRA, Sherman and Sherman Electric do not cite any legal authority refuting the principle that employers are not protected under § 7 of the NLRA. .

Furthermore, § 8 of the NLRA is inapplicable. Section § 8 covers unfair labor practices which interfere with, restrain or coerce employees in the exercise of their particular rights guaranteed under the NLRA. 29 U.S.C.A. § 158(a)(1). Section § 8 regulates employers and collective bargaining agents by preventing them from acting in derogation of employee's rights under the NLRA. From the facts of this case, Sherman and Sherman Electric are neither employers nor a union restricting employee rights. Thus, Sherman and Sherman Electric are not protected under § 8 of the NLRA.

Sherman and Sherman Electric also argue that sanctioned actions of organizing on the part of employees and unions must extend to the union employer. They reason that if the union employer's actions are not sanctioned, employees and unions are consequently hindered in exercising their rights under § 7 of the NLRA. They argue that Sherman's and Sherman Electric's activities are therefore implicitly preempted under *Lodge 76, Int'l Ass'n of Machinists v. WERC,* 427 U.S. 132 (1976). This second line of preemption is not applicable to this case.

The *Machinists* doctrine of preemption sustains Congress' intentional balance between the uncontrolled power of management and labor. *Building & Constr. Trades Council v. Assoc. Bldrs. & Contr.,* 113 S.Ct. 1190, 1195 (1993). Basically, the *Machinists* line of preemption is based on Congress' intention that some activities, such as the use of peaceful economic weapons in bargaining, be free from both state and federal regulation and thus only subject to economic

forces. In *Machinists*, union members refused to work overtime during a contract dispute. *Id.* at 133-35. The employer filed unfair labor practice charges with the NLRB and the Wisconsin Employment Relations Commission. *Id.* at 135. The Wisconsin Labor Commission issued a cease and desist order per state law, and the Wisconsin Supreme Court affirmed. *Id.* at 136. The United States Supreme Court however held that Wisconsin law was preempted because enforcing state law would upset the balance of economic power between labor and management. *Id.* at 148-49. Thus, economic weapons, such as refusal to work overtime, were a natural part of the collective bargaining process and not subject to preemption. *Id.* at 149-51.

The difference between the *Garmon* and *Machinists* lines of preemption is explained in a recent United States Supreme Court decision: "When we say that the NLRA pre-empts state law, we mean that the NLRA prevents a State from regulating within a protected zone, whether it be a zone protected and reserved for market freedom, see *Machinists* or for NLRB jurisdiction, see *Garmon*." *Building & Constr. Trades Council,* 113 S.Ct. at 1196. Sherman's and Sherman Electric's reliance on *Machinists* for the proposition that their actions are covered by the NLRA is misplaced. This is not a situation where economic weapons such as self-help are preempted due to market forces. This situation revolves around the NLRB's jurisdiction and activities that fall within the NLRA. The *Machinists* preemption doctrine is not implicated in this case.

## NLRB'S JURISDICTION

Last, Mitchell asserts that the state court should retain jurisdiction because there is no mechanism to

invoke the NLRB's jurisdiction or no way to induce respondents to do so. We disagree.

As early as the *Garmon* decision, the United States Supreme Court articulated the rule that where preemption is appropriate, it is applied regardless of whether the board would hear the dispute. "To require the States to yield to the primary jurisdiction of the National Board does not ensure Board adjudication of the status of a disputed activity." *Id.* at 245. The Court articulates that if the board fails to assume jurisdiction, the states are not free to regulate these activities. *Id.* at 246.

Mitchell relies on *Sears* for the proposition that state law is not preempted if the injured party has no acceptable means of invoking the NLRB's jurisdiction and cannot induce its adversary to do so. In *Sears,* the employer brought a state trespass action against a union due to picketing activities. *Id.* at 182-83. In Mitchell's instance, as an employer, he is bringing business tort claims against employee Boley and Local Union #953, not a property rights dispute. In *Sears,* the Court distinguishes business tort actions and the trespass action by stating that preemption has its greatest force when applied to state actions regulating relationships between employees, their union and their employer. *Id.* at 193.

Also, Mitchell's reliance on Justice White's concurrence in *International Longshoremen's Local 1416 v. Ariadne Shipping Co.,* 397 U.S. 195 (1970), is not persuasive. In *Ariadne,* the majority found that the peaceful picketing involved was arguably protected under § 7 of the NLRA. The concurrence agreed with the outcome, but questioned the lack of an effective mechanism for the employer to obtain a determination from the NLRB. *Id.* at 201 (White, J., concurring). This

407

analysis, based on the *Sears* reasoning, also applies to an activity involving picketing, not a state business tort action. Thus, we conclude that regardless of Mitchell's lack of opportunity to invoke the NLRB's jurisdiction, the actions against Boley and Local Union #953 are preempted.

The trial court's judgment is affirmed as to Boley and Local Union #953. The judgment as to Sherman and Sherman Electric is reversed and cause remanded consistent with this opinion.

*By the Court.*—Judgments affirmed in part; reversed in part and cause remanded. Costs to Boley and Local Union #953.