S.E.S., Appellant–Respondent,

v.

GRANT COUNTY DEPARTMENT OF WELFARE, Appellee–Petitioner.

No. 27A05–9103–CV–86.

Court of Appeals of Indiana, Fifth District.

Dec. 17, 1991.

Anne C. Selby, Marion, for appellant-respondent.

Warren Haas, Marion, for appellee-petitioner.

SHARPNACK, Judge.

S.E.S. (Mother) appeals from an order of the Grant Superior Court terminating her parental rights. We affirm.

Mother raises three issues for review which we consolidate and restate as:

1. Whether the judgment is supported by sufficient evidence.

2. Whether the DPW was required to prove by clear and convincing evidence that it offered Mother reasonable services to assist her in fulfilling her parental obligations.

The facts most favorable to the judgment of the trial court are as follows: On September 23, 1987, Mother's two sons, D.S., then age 7, and J.S., who was six months old, were removed from Mother's custody under a dispositional decree having previously been adjudicated as being children in need of services (CHINS). The Grant County Department of Public Welfare (DPW) instituted that action after Mother had been convicted of driving while intoxicated. Both children remained in the custody of the DPW except for a seven month period in 1988. Following a petition from the Grant County Department of Welfare and a subsequent hearing, the court terminated Mother's parental rights with regard to both children. The juvenile referee issued findings stating, in relevant part, that there was a reasonable probability that the conditions resulting in the children's removal would not be remedied and that termination was in the best interests of the children. The trial court adopted the referee's findings.

Mother has a long history of problems stemming from her alcoholism. She has been convicted of several alcohol related offenses. At the time of the hearing, she had received counseling for at least eight years. She experienced periods of sobriety followed by relapses into drinking. Following her second conviction for driving while intoxicated, Mother underwent 32 days of treatment at the Wabash Addiction Center, and she responded very well. However, following her release, she did not continue with her "aftercare" programs and relapsed into alcohol abuse. In May, 1988, Mother's sister reported to the DPW that Mother appeared at her residence drunk, dropped off her children, and disappeared. The children did not have clothes or diapers. During an extended visit by J.S. in March, 1990, Mother stabbed R.D., D.S.'s father, in front of J.S.

The Department of Welfare offered both personal and family counseling services to Mother. The sessions were designed to help Mother remain sober, improve her interpersonal relationships, resolve her own childhood issues, control her temper, learn parenting, and raise her self esteem. Mother missed nine of forty-one personal counseling sessions without an excuse. When the DPW attempted to help Mother with her alcohol problem, she assured them that she was in aftercare and was attending Alcoholics Anonymous meetings.

During the time that D.S. lived with Mother, he witnessed Mother being repeatedly raped and beaten by her second husband, as well as frequent losses of control by Mother. D.S. has serious emotional problems which are the result of his mother's alcohol related behavioral problems. He has exhibited extreme hostility and frustration and needs a stable environment. At the time of the hearing, he was still in classes for emotionally handicapped children, but he had been almost fully mainstreamed into normal classes. D.S. showed signs of regression following visits with

Mother. The DPW intends to attempt to place D.S. in a home with a very stable environment, and it believes the prognosis for doing so is good.

J.S. lived with Mother for the first three months of his life and for a seven month period in 1988. J.S. is a very troubled child who has exhibited instances of extreme hostility and frustration. He has demonstrated an extreme fear of abandonment. Mary Pacios, a clinical psychologist who has counseled J.S., described him as a high risk child in need of a structured and stable environment. Like D.S., J.S. did not do very well in the first foster home in which he was placed, but he had improved in the foster home where he resided at the time of the trial. He became markedly more hostile and violent following visits with his mother. After one visit, during which he saw Mother stab R.D., he stabbed a kitten and pretended to stab other things with knives. He also spoke of wanting to see blood and of being covered in blood. The DPW plans to place him for adoption in the near future. The prognosis for his placement is excellent.

Here, the trial court has filed special findings pursuant to Ind.Trial Rule 52. We therefore apply a two-tier standard of review. First, we determine whether the evidence supports the findings, and then, we determine whether the findings and conclusions support the judgment. *Page v. Greene County Department of Welfare* (1991), Ind.App., 564 N.E.2d 956, 959. In applying that standard, we will not reweigh the evidence nor judge the credibility of witnesses. Instead, we consider only the evidence and reasonable inferences drawn therefrom that are most favorable to the judgment of the trial court. *Id.*

■ IND.CODE § 31–6–5–4 controls the termination of parental rights. That section provides that the attorney for the county welfare department or the prosecu-

tor may file a petition to terminate the parent-child relationship of a child in need of services, and

(c) The petition ... must allege that:

(1) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(2) there is a reasonable probability that the conditions that resulted in the child's removal will not be remedied;

(3) the termination is in the best interests of the child; and

(4) the county department has a satisfactory plan for the care and treatment of the child.

I.C. § 31–6–5–4 (1988)[1]. The petitioner has the burden of demonstrating the above elements by clear and convincing evidence. *Matter of J.K.C.* (1984), Ind.App., 470 N.E.2d 88, 91. If the trial court finds that the petitioner has proven the allegations in the petition, it must terminate the parent-child relationship. I.C. § 31–6–5–4.3 (1991 Supp).

Mother essentially claims that the DPW failed to demonstrate a reasonable probability that the conditions that led to the removal of her children will not be remedied. She bases her argument on her assertion that alcoholism is the root of the problems resulting in the removal of her children, and that she has remained sober for the past six months, the longest period of sobriety in her adult life. She points to the testimony of Joseph Grott, a case manager at the Medpark Center, where she was ordered to undergo treatment as a condition of her probation pursuant to her conviction for stabbing R.D. Grott testified that Mother was doing very well in treatment. Mother contends that, because Grott's testimony is the only testimony regarding how she was doing at the time of the hearing, the trial court erred in finding that there was a reasonable probability

---

1. I.C. § 31–6–5–4(c) now reads:
 (2) there is a reasonable probability that:
 (A) the conditions that resulted in the child's removal will not be remedied; or
 (B) the continuation of the parent-child relationship poses a threat to the well-being of the child;

\* \* \* \*
 (4) there is a satisfactory plan for the care and treatment of the child.
 I.C. § 31–6–5–4(c) (as amended effective July 1, 1990 by Acts 1990, P.L. 155–1990, SEC. 24).

that the conditions resulting in the removal of the children would not be remedied. We disagree.

Mother's argument, while eloquently made, is plainly an invitation for us to reweigh the evidence. In *Matter of JKC*, the court recognized that a trial court should judge parental fitness as of the time of the hearing, taking into consideration evidence of changed conditions. However, the court additionally recognized the permanent effect of termination and stated that the trial court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the children. *Matter of JKC*, 470 N.E.2d at 92. Here, the trial court found that alcohol and chemical dependency played a major role in Mother's life, at least through April, 1990. The court also found that Mother had gone through counseling for the previous eight years, and the court cited incidents such as the stabbing of R.D. that occurred as recently as March, 1990. The trial court was entitled to conclude that Mother was likely to regress once she left the structured environment of Medpark, especially in light of her relapse after being released from Wabash Addiction Center where she had also made great progress. Furthermore, the trial court also found that Mother had not attempted to address the special problems of her children, and that finding is supported by the fact that Mother refused to acknowledge that she was a cause of J.S.'s problems.

 Mother also contends that the trial court erred in finding that it was in the children's best interests to terminate her parental rights. She points to the fact that the children were still exhibiting many of the same behavior problems in foster care that they had when they were in her custody. Again, this is simply an invitation to reweigh the evidence. It is true that both the children remained very troubled at the time of the hearing. However, there was also strong evidence that they had improved in structured environments. Furthermore, the DPW presented evidence that the children had regressed following visits with Mother. The trial court's findings clearly are supported by substantial evidence.

Mother cites several cases in which appellate courts have found the evidence sufficient to uphold termination of parental rights. She argues that factors present in those cases, such as great progress made in foster care, parents who did not maintain contact with the children, and parents who remained unemployed or transient, do not exist in her case. While her observation is correct, it does not mandate reversal. Each case has unique facts. There is no exclusive list of factors that must be present for a trial court to find that termination would be in the children's best interests.

 Finally, Mother contends that the trial court erred in terminating her parental rights because the DPW did not demonstrate that it had offered her reasonable assistance in fulfilling her parental obligations. She claims that the DPW did not offer her services aimed at treating her alcoholism, which she claims was the root of her inability to properly parent her children.

Proof that the parent has been offered reasonable services to assist the parent in fulfilling her parental obligations is not required under I.C. § 31–6–5–4. Prior to 1982 that section required that the petition to terminate allege that "reasonable services have been offered or provided to the parent to assist him in fulfilling his parental obligations, and either he has failed to accept them or they have been ineffective[.]" I.C. § 31–6–5–4 (1979). However, the legislature specifically deleted that language. Acts 1982, P.L. 183 Sec. 4. Mother urges us to continue to read such a requirement into the statute. She relies upon I.C. § 31–6–1–1(5) which states that it is the purpose of Article 6 "to strengthen family life by assisting parents to fulfill their parental obligations[.]" I.C. § 31–6–1–1 (1990).

We do not accept Mother's construction of the statute. The object of statutory interpretation is to determine and effect the intent of the legislature. *Walton v.*

*State* (1980), 272 Ind. 398, 402, 398 N.E.2d 667, 671. The legislature clearly enumerated in I.C. 31–6–5–4 the specific elements that must be proved for termination of parental rights. Where certain items or words are specified or enumerated in a statute, other items or words are excluded by implication. *Health and Hospital Corporation of Marion County v. Marion County* (1984), Ind.App., 470 N.E.2d 1348, 1355, *reh'g denied* 476 N.E.2d 887, *trans. denied.* Furthermore, the legislature has clearly expressed its intent that the offer of reasonable services by the DPW is not an element by repealing that specific provision. We will not use the general policy statement of Article 6 to judicially rewrite a requirement into I.C. 31–6–5–4 that the legislature has specifically removed. We disagree with *Matter of Campbell* (1989), Ind.App., 534 N.E.2d 273 and *Matter of D.B.* (1990), Ind.App., 561 N.E.2d 844 to the extent that those cases may be read to require proof that the DPW has offered reasonable services to assist the parent in fulfilling her parental obligations as a prerequisite to termination.

For the reasons contained herein, we affirm the the trial court's order terminating Mother's parental rights.

AFFIRMED.

BUCHANAN and BARTEAU, JJ., concur.