## In re the WARDSHIP OF R.B., S.B., M.Q.B., M.K.B., and J.B.

### No. 02A03–9212–CV–415.

Court of Appeals of Indiana, Third District.

June 21, 1993.

Transfer Denied Sept. 13, 1993.

---

Richard L. Williams, Fort Wayne, for appellant.

Karen S. Walker, Lebamoff Law Offices, Fort Wayne, for appellee.

HOFFMAN, Judge.

Appellant-respondent T.B.H. (mother) appeals from the judgment of the Allen Superior Court which terminated her parental rights with regard to five of her children: R.B., S.B., M.Q.B., M.K.B., and J.B.[1] The facts relevant to this appeal disclose that on August 14, 1990, the Allen County Department of Public Welfare (DPW) filed a Child in Need of Services (CHINS) petition on various grounds, including: (1) T.B.H. was a user of crack cocaine, (2) on the day S.B. was born, T.B.H. tested positive for cocaine, (3) while pregnant with S.B., T.B.H. sought no prenatal care, (4) S.B. was born with an addiction to a controlled substance or a legend drug, (5) the physical or mental conditions of R.B., S.B., M.Q.B., M.K.B., and J.B. were seriously impaired as a result of the inability, refusal, or neglect of T.B.H. to supply the children with the necessary food, clothing, shelter, medical care, education, or supervision, (6) because of her drug use, T.B.H. was unable to provide her children with an appropriate home or supervision, and (7) T.B.H. had no legal job to provide support for her children.

On October 29, 1990, an initial hearing was conducted. At the hearing, T.B.H. admitted all the allegations made by the DPW except she denied not having a job. The court found the children to be CHINS. On January 8, 1991, the court entered a

---

1. The trial court's judgment also involuntarily terminated the parental rights of the alleged fathers: W.W., L.H., L.B., and F.M. None of the alleged fathers are participating in this appeal.

dispositional decree and adopted a Parent Participation Plan (PPP) for T.B.H. to follow. The PPP ordered T.B.H. to do the following:

"[5] A. Obtain a psychological evaluation upon referral by Department of Public Welfare and follow the recommendations of the therapist.

B. Obtain a drug/alcohol assessment and follow recommendations of therapist.

C. Obtain a General Education Diploma.

D. Obtain parenting classes.

■ A. Maintain visitation with children.

B. Obtain and maintain stable housing.

C. Obtain and maintain stable income which includes, but not limited to employment.

D. Establish paternity for [R.B.]."

From the time the PPP was ordered in January of 1991 until the final day of the termination hearing on August 12, 1992, three DPW caseworkers worked with T.B.H.. By January 1992's court review hearing, the only portions of the PPP that T.B.H. had completed were obtaining a drug/alcohol assessment and a psychological evaluation; however, she had not followed through with the recommendations of the assessments. T.B.H. visited with her children only sporadically. T.B.H. also tested positive for cocaine. At the court hearing in January 1992, the court ordered the DPW to file petitions to terminate T.B.H.'s parental rights as to her five children.

On January 15, 1992, the DPW filed the petitions to terminate the parent-child relationships. The fact-finding hearing was held on June 4, 1992 and August 12, 1992. After hearing the evidence, the court found by clear and convincing evidence that there was a reasonable probability that the conditions resulting in the removal of the children would not be remedied and terminated T.B.H.'s parental rights. This appeal ensued.

T.B.H. raises four restated issues for review on appeal:

(1) whether the reasonable probability language contained in IND.CODE § 31–6–5–4(c)(2) (1992 Supp.) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

(2) whether the passage of the clear and convincing standard set forth in IND. CODE § 31–6–7–13(a) (1988 Ed.) implicitly repealed the reasonable probability language found in IND.CODE § 31–6–5–4(c)(2);

(3) whether there was clear and convincing evidence to support a finding by the trial court that the conditions that resulted in the removal of the children from T.B.H.'s custody would not be remedied; and

(4) whether the trial court erred in admitting into evidence results of a drug test.

IND.CODE § 31–6–5–4(c) enumerates the allegation that must be contained in a petition to terminate parental rights. Among these allegations are that:

"(2) there is a reasonable probability that:

(A) the conditions that resulted in the child's removal will not be remedied; or

(B) the continuation of the parent-child relationship poses a threat to the well-being of the child[.]"

IND.CODE § 31–6–5–4(c)(2). If the trial court finds that the allegations contained in IND.CODE § 31–6–5–4 or 4.2 are true, the court shall terminate the parent-child relationship. IND.CODE § 31–6–5–4.3 (1992 Supp.).

T.B.H. contends that IND.CODE § 31–6–5–4(c)(2) is unconstitutional on its face because it requires a standard lower than clear and convincing evidence for the trial court to grant a petition to terminate parental rights. More specifically, she argues that since IND.CODE § 31–6–5–4(c) contains the words "reasonable probability," the statute provides for a lesser standard of proof than is constitutionally permissible. This Court has previously rejected this precise contention in *Matter of VMS*

(1983), Ind.App., 446 N.E.2d 632, 636, concluding that IND.CODE § 31–6–5–4(c)(2) is indeed constitutional when supported by clear and convincing evidence.

■ Every statute stands before this Court clothed with the presumption of constitutionality, and such presumption continues until clearly overcome by a showing to the contrary. *Matter of VMS*, 446 N.E.2d at 636. Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Indiana law, procedural due process requires the DPW to prove the statutory requisites for termination of parent-child relationships by clear and convincing evidence.

   *See Santosky v. Kramer* (1982), 455 U.S. 745, 769, 102 S.Ct. 1388, 1402–1403, 71 L.Ed.2d 599, 616–617;

   *Matter of VMS*, 446 N.E.2d at 636; IND.CODE § 31–6–7–13(a).

As explained in *VMS*, the Constitutional Due Process requirement of clear and convincing evidence is met when the DPW shows by clear and convincing evidence a reasonable probability that conditions resulting in the child's removal from his parent's custody will not be remedied. *Matter of VMS*, 446 N.E.2d at 636. This assures the court that there is, in fact, a high degree of probability that the conditions will not be remedied—a standard considerably above the more likely than not implications of the preponderance requirement. *Id.* Like the parents in *VMS*, T.B.H. has failed to convince us that IND.CODE § 31–6–5–4(c) is unreasonable, oppressive, or otherwise unconstitutional. *See id.* Further, any contention that IND.CODE § 31–6–5–4 violates substantive due process has been waived as T.B.H. raises this issue for the first time in her reply brief. *See Boucher v. Exide Corp.* (1986), Ind.App., 498 N.E.2d 402, 404, *trans. den.* (party may not raise arguments for the first time in reply brief).

■ Alternatively, T.B.H. argues that the passage of the clear and convincing standard set forth in IND.CODE § 31–6–7–13(a) implicitly repealed the reasonable probability language found in IND.CODE § 31–6–5–4(c)(2). In construing a statute, this Court must give effect to the legisla-

tive intent. *Horne v. State* (1991), Ind. App., 572 N.E.2d 1333, 1335, *trans. den..* Statutes dealing with the same subject matter will be construed as harmonious, if possible. *Guinn v. Light* (1990), Ind., 558 N.E.2d 821, 823. In construing a statute, the court must give effect to the entire act and, if possible, effect must be given to every word and clause therein. *Id.* Here, T.B.H.'s reasoning is based on the erroneous assumption that the statutes are inconsistent with one another. As previously determined, they are not. Moreover, since the 1984 amendment to IND.CODE § 31–6–7–13, requiring a clear and convincing standard, IND.CODE § 31–6–5–4 has been amended three times. Each time, the legislature has chosen to retain the reasonable probability language. If the legislature had intended that the language of IND. CODE § 31–6–5–4 be changed, it would have amended the statute and not done so by implication as T.B.H. contends.

■ T.B.H. also argues that the DPW did not show by clear and convincing evidence that a reasonable probability existed that the conditions that resulted in removal of the children from her custody would not be remedied. T.B.H. is challenging the sufficiency of the evidence. In considering whether the evidence is sufficient to support a trial court's judgment terminating parental rights, this Court will not reweigh the evidence nor judge the credibility of the witnesses. *Odom v. Allen County DPW* (1991), Ind.App., 582 N.E.2d 393, 395. Only the evidence most favorable to the judgment will be considered. *Id.*

■ At the termination hearing, the DPW offered evidence that the conditions had not been remedied. To determine if there is a reasonable probability that the conditions which resulted in the removal of the children will not be remedied, the court must judge a parent's fitness to care for the child at the time of the termination hearing taking into account any evidence of changed conditions. *Page v. Greene County Dept. of Welfare* (1991), Ind.App., 564 N.E.2d 956, 960. At the same time, the court must also evaluate the parent's patterns of conduct to determine whether

there is a substantial probability of future neglect or deprivation. *Id.*

■ The evidence in the record clearly supports the trial court's determination that the conditions resulting in the children's removal would not be remedied. By her behavior T.B.H. has shown an inability, refusal, or neglect to supply the children with the necessary food, clothing, shelter, medical care, education, or supervision. Despite T.B.H.'s drug problems, she failed to regularly attend counseling. Although there was evidence presented showing T.B.H. attended a few drug counseling and narcotics anonymous (NA) meetings, DPW caseworker Reese testified that when she was working with T.B.H., T.B.H. told her that she went to one NA meeting but felt she did not need to go to any more. Such evidence is consistent with drug/alcohol assessment which found that T.B.H. seemed to minimize her drug problem. As for drug counseling, T.B.H.'s caseworkers were unaware that T.B.H. received any counseling. T.B.H.'s own exhibit showed she only attended four 1–hour sessions in May of 1992.

Additionally, she often missed scheduled visitation with her children and was not able to provide them with a stable home. T.B.H. failed to complete parenting classes as required by the PPP. T.B.H. never obtained steady employment from the time of the children's removal until the second date of the termination hearing. She also failed to obtain her GED. From the time the children were removed until the last day of the termination hearing, T.B.H. has shown a total lack of commitment on her part to have her children returned to her care. The DPW carried its burden of proof by clear and convincing evidence. *See Odom,* 582 N.E.2d at 395–396.

■ T.B.H. also argues that the trial court erred in admitting into evidence Exhibit No. 6, results of a urine specimen drug test. She contends that a chain of custody of the specimen was not sufficiently established so that the test results could be considered reliable. Exhibit No. 6 is a drug test showing that T.B.H. allegedly tested positive for cocaine on November 20, 1991. T.B.H. has failed to demonstrate that error, if any, from the admission of Exhibit No. 6 has prejudiced her. During the termination hearing, T.B.H. admitted that, after the CHINS was established, she had tested positive at least once; hence, admission of the test results was merely cumulative evidence. *Clark v. State* (1976), 265 Ind. 161, 165–166, 352 N.E.2d 762, 766. T.B.H. has shown no reversible error in the admission of Exhibit No. 6.

Affirmed.

STATON and CONOVER, JJ., concur.