In re the WARDSHIP OF J.C. D.D., Appellant–Respondent,

v.

ALLEN COUNTY OFFICE OF FAMILY AND CHILDREN, Appellee–Petitioner.

No. 02A03–9404–JV–161.

Court of Appeals of Indiana, Third District.

Feb. 14, 1995.

Rehearing Denied May 3, 1995.

Thomas C. Allen, Fort Wayne, for appellant.

Jamie L. Thompson, Lebamoff Law Offices, Fort Wayne, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-respondent D.D. appeals from the termination of his parent-child relationship with his son, J.C. The facts relevant to this appeal are set forth below. J.C. was born in 1985. The whereabouts of his mother are unknown.[1] In April 1992, D.D. temporarily placed J.C. with the Madison County Department of Welfare ("DPW") because he and J.C. had no place to live and D.D. was anticipating being arrested. After D.D. regained custody of J.C., the DPW soon discovered that D.D. and J.C. were living in a car and that D.D. was once more anticipating being arrested. The DPW took J.C. into protective custody and placed him in foster care.

In July 1992, the trial court found J.C. to be a child in need of services ("CHINS"). At that time, D.D. admitted to being unemployed since November 1991 and that he was unable to provide food, shelter, and medical care for J.C. After the CHINS determination, the DPW formulated a parent participation plan (the "Plan") for D.D. to follow to help him regain custody of J.C. The DPW instructed D.D. to: obtain psychological/social and drug/alcohol assessments, accept services from an outreach program, maintain consistent contact with J.C., pay support, maintain employment and independent housing, and refrain from further illegal activities. However, D.D. did not comply with the Plan.

On September 8, 1992, the DPW filed the Plan with the trial court and it was ordered on September 15, 1992. On December 29, 1993, the trial court terminated the parent-child relationship between D.D. and J.C. This appeal ensued.

The sole consolidated issue on appeal is whether there is sufficient evidence to terminate the parental rights of D.D. The right of a parent to raise his child, although of constitutional dimension, is not absolute. *See Egly v. Blackford County DPW* (1992), Ind., 592 N.E.2d 1232 (*citing Lassiter v. Department of Social Services* (1981), 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640). When determining an appropriate disposition of a petition to terminate parental rights, the rights of a parent are subordinated to the child's best interest. *Matter of Adoption of D.V.H.* (1992), Ind.App., 604 N.E.2d 634, 636, *trans. denied*. In considering whether the evidence is sufficient to support a trial court's decision to terminate parental rights, this Court will neither reweigh the evidence nor judge the credibility of the witnesses. *In re Wardship of R.B.* (1993), Ind.App., 615 N.E.2d 494, 497. Only the evidence most favorable to the judgment will be considered. *Id.*

Specifically, D.D. contends there is insufficient evidence that the conditions which resulted in J.C.'s removal will not be remedied. *See* IND.CODE § 31-6-5-4(c)(2)(A) (1993 Ed.). To determine whether the conditions are likely to be remedied, the trial court must judge a parent's fitness to care for the child as of the time of the termination hearing and take into account any evidence of changed conditions. *Odom v. Allen County DPW* (1991), Ind.App., 582 N.E.2d 393, 395. It must also evaluate the parent's patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.*

D.D. first points out that he was incarcerated starting September 11, 1993. He argues that due to his imprisonment, the Plan as offered to the trial court was impossible for him to follow. D.D. also attributes fault for his noncompliance to the DPW for failing

---

1. Her parental rights were also terminated on December 29, 1993.

to offer him "reasonable services" to assist him in regaining custody of J.C.

At the termination hearing, D.D. neither informed the court of his incarceration nor at any time objected to the terms of the Plan. Also, since July 1992, the DPW repeatedly explained to D.D. what was required of him to regain custody of J.C.

■ D.D.'s argument appears to be premised on the incorrect assumption that his cooperation with the DPW and his adherence to the Plan was necessary only after the trial court ordered his compliance. IND.CODE § 31–6–4–17 (1993 Ed.) provides, in pertinent part:

"[A] prosecutor, ... attorney for the county office of family and children, a probation officer, a caseworker, or the guardian ad litem or court appointed special advocate *may* sign and file a petition for the juvenile court to require the participation of a parent, guardian, or custodian in a program of care, treatment, or rehabilitation for the child...."

(Emphasis added). The language of this statute makes it clear that a county department of public welfare retains discretion to decide whether or not to enter into a participation plan with parents. There is no requirement that it first petition and obtain approval by the trial court before formulating such a plan.

■ Moreover, prior to 1982 amendments to IND.CODE § 31–6–5–4 (1979 Ed.), termination of parental rights required a showing that "reasonable services [were] offered or provided to the parent[s] to assist [them] in fulfilling [their] parental obligations, and either [the parents] ... failed to accept them or they [were] ineffective." IND.CODE § 31–6–5–4 (1979 Ed.). However, as this language was specifically deleted in 1982 by legislative amendment, the requirement no longer exists. *S.E.S. v. Grant County Dept. of Welfare* (1991), Ind.App., 582 N.E.2d 886, 888 (adopted in *S.E.S. v. Grant County Dept. of Welfare* (1992), Ind., 594 N.E.2d 447). Thus, while a participation plan serves as a useful tool in assisting parents in meeting their obligations and while county departments of public welfare routinely offer services to assist parents in regaining custody of their children, termination of parental rights may occur independently of them, as long as the post–1982 elements of IND.CODE § 31–6–5–4 (1993 Ed.) are proved by clear and convincing evidence. *See S.E.S.*, 582 N.E.2d at 889.

■ Here, although not required to do so, the DPW in the present case did, in fact, undertake considerable efforts to help D.D. meet the requirements for D.D.'s successful reunion with his son. The DPW's efforts included: arranging for visitation at the DPW, assisting him in obtaining employment, placing him with independent housing pursuant to the Wayne Township Self Sufficiency Program (SSP), and offering him other programs and drug testing through the CASI Center.

Despite the efforts of the DPW, however, D.D. failed to comply with any of the above instructions prior to his incarceration. His noncompliance was his own fault, more specifically, his own persistent refusal and inaction to comply. D.D. failed to attend a single visitation between June and September of 1992. After less than a month at his employment, he was fired because he was arrested. Additionally, D.D. was evicted from the SSP for stealing from the cashbox and violating other program rules. Although D.D. failed to obtain the required substance abuse and psychological assessments prior to his incarceration, his use of drugs and alcohol was nonetheless established at the termination hearing through his own admission to abusing alcohol and crack-cocaine between December of 1991 and September 1992.

Further, D.D. told caseworkers that if he were required to endure any more services to regain custody of J.C., they could keep him. At times his concern was focused on what would happen to him if he chose to relinquish custody of J.C. Even after his incarceration, he continued in his failure to abide by the instructions of the DPW by failing to utilize established procedures to contact J.C.

The evidence also discloses that D.D. has a pattern of criminal behavior, with several arrests since June 1992. His last conviction

for armed robbery resulted in his present incarceration. D.D's earliest release date is August 1996. His latest release date is August 2000. D.D.'s current incarceration makes it impossible for him to see to the upbringing of J.C. His pattern of criminal behavior makes it unlikely that he will be able to do so in a meaningful way in the future. *See Matter of Danforth* (1989), Ind., 542 N.E.2d 1330; *B.R.F. v. Allen County DPW* (1991), Ind.App., 570 N.E.2d 1350, 1352. Consequently, there is sufficient evidence the conditions which resulted in J.C.'s removal will not be remedied. *See* IND. CODE § 31–6–5–4(c)(2)(A). Moreover, at the termination hearing, the DPW presented evidence that termination will be in the best interest of J.C. as he has developed emotional problems requiring medical attention and counsel, none of which D.D. can provide.

The trial court properly terminated D.D.'s parental rights with respect to J.C. Accordingly, the decision of the trial court is affirmed.

Affirmed.

GARRARD and ROBERTSON, JJ., concur.