666 N.E.2d 73 (1996)
In the Matter of the Termination of the Parent-Child Relationship of M.B. and P.B.
Paul BAILEY, Appellant-Respondent,
v.
TIPPECANOE COUNTY DIVISION OF FAMILY AND CHILDREN, Appellee-Petitioner.
No. 79A05-9509-JV-348.
Court of Appeals of Indiana.
May 15, 1996.
Transfer Denied June 17, 1996.
*75 Steven Knecht, Vonderheide & Knecht, Lafayette, for Appellant.
Keith R. Fafarman, Gambs, Mucker, Bauman & Seeger, Lafayette, for Appellee.

*74 OPINION
SHARPNACK, Chief Judge.
Paul Bailey appeals the termination of his parental rights to his two children. He raises two issues which we restate as:
(1) whether the Division of Family and Children ("DFC") presented sufficient evidence to support the termination of his parental rights; and
(2) whether the termination of his parental rights, following convictions for burglary and theft, constituted a violation of double jeopardy.
We affirm.
The facts most favorable to the termination follow. M.B. was born to Sheryl Swisher Manus and Bailey on May 19, 1991. On January 22, 1992, Bailey was convicted of theft and burglary. He was sentenced on February 20, 1992, to a total of thirteen years imprisonment. P.B. was born to Manus and Bailey on September 28, 1992.
On March 4, 1993, Manus brought the children to the DFC, stating that she could no longer care for them. The children were removed from her custody on March 8, 1993. At that time, Bailey was in prison.
On July 13, 1993, the children were determined to be Children in Need of Services. On May 24, 1994, the DFC filed a petition to terminate the parental rights of Manus and Bailey. On June 14, 1995, the trial court entered an order terminating Bailey's parental rights. The order stated in part:
"This Court ... now concludes and finds that the following matters have been proven by clear and convincing evidence with respect to the `Joint Verified Petition to Terminate' as it relates to the Father, Paul D. Bailey:
1. That the children, [M.B.] and [P.B.], have been removed from the Mother, Cheryl Manus, and the Father, Paul D. Bailey, for at least six (6) months under the Court's dispositional decree previously entered in this cause;
2. That there is a reasonable probability that:
(A) the conditions that resulted in both children's removal or the reasons for their placement outside the parents' homes will not be remedied; and
(B) the continuation of the parent-child relationship poses a threat to the well-being of both [M.B.] and [P.B.];

*76 3. That termination of the parental rights of the Father is in the best interests of both children; and
4. That a satisfactory plan exists for the care and treatment of both children."
Record, pp. 33-35. Bailey now appeals.

I.
The first issue raised for our review is whether the DFC presented sufficient evidence to support the termination of Bailey's parental rights.
The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution. In the Matter of Tucker, 578 N.E.2d 774, 778 (Ind.Ct. App.1991), trans. denied. However, these parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. In the Matter of D.V.H., 604 N.E.2d 634, 636 (Ind. Ct.App.1992), trans. denied.
To effect the involuntary termination of a parent-child relationship, the DFC must prove the following elements:
"(1) The child has been removed from the parent for at least six (6) months under a dispositional decree;
(2) There is a reasonable probability that:
(A) The conditions that resulted in the child's removal or the reasons for placement outside the parent's home will not be remedied; or
(B) The continuation of the parent-child relationship poses a threat to the well-being of the child;
(3) Termination is in the best interests of the child; and
(4) There is a satisfactory plan for the care and treatment of the child."
Ind.Code § 31-6-5-4(c); see also Egly v. Blackford County Dep't of Public Welfare, 592 N.E.2d 1232, 1234 (Ind.1992). To sustain termination, the evidentiary proof must rise to the level of clear and convincing evidence. I.C. § 31-6-7-13(a).
In reviewing the termination of parental rights, we will neither reweigh the evidence nor judge the credibility of the witnesses; we will consider only the evidence that supports the judgment and reasonable inferences to be drawn from the evidence. D.V.H., 604 N.E.2d at 637. The judgment may be set aside only if the findings or judgment are clearly erroneous. Id. A finding is clearly erroneous when there are no facts or inferences to be drawn therefrom which support it. Indiana-Kentucky Elec. Corp. v. Green, 476 N.E.2d 141, 143 (Ind.Ct. App.1985), reh'g denied, trans. denied.
The trial court should judge a parent's fitness at the time of the termination hearing, taking into consideration evidence of changed conditions. J.K.C. v. Fountain County Dep't of Public Welfare, 470 N.E.2d 88, 92 (Ind.Ct.App.1984), trans. denied. However, a parent's habitual patterns of conduct must also be considered to determine whether there is a substantial probability of future neglect or deprivation. Id.; D.V.H., 604 N.E.2d at 637. Termination can be appropriate not only where the child is in immediate physical danger, but also where the child's emotional and physical development are threatened. Egly, 592 N.E.2d at 1234.
Bailey contends the trial court erred in concluding that the DFC met its burden of proof for each of the statutory elements. Specifically, Bailey alleges the DFC failed to prove that the conditions prompting the children's placement outside the home will not be remedied or that the continuation of the parent-child relationship poses a threat to the children's well-being. Bailey also contends the DFC failed to show that termination is in the best interests of the children.
Bailey points to evidence in the record to support his position that his parental rights should not have been terminated. However, this argument is essentially an invitation to reweigh the evidence. We cannot do so. See D.V.H., 604 N.E.2d at 637. Instead, we will consider only the evidence most favorable to the judgment in deciding whether the trial court's conclusion that the DFC met its burden of proof is clearly erroneous. See id.
*77 First, we address Bailey's contention that the DFC failed to demonstrate the conditions will not change or the parent-child relationship poses a threat to the well-being of the children. The record reflects that Bailey has an extensive criminal record, a substance abuse problem, and a third child that his mother has adopted.
As a juvenile, he was involved in the system for being incorrigible, for running away, and for committing such acts as breaking and entering, shoplifting, and theft. He was placed in foster care and later on house arrest. After failing to comply with the restrictions of house arrest, he was placed in a detention center. He continued to have problems with school attendance and substance abuse after he returned home. His parents eventually told him to leave their house because he would not cooperate.
Bailey had a series of criminal convictions after leaving his parents' home. These convictions include larceny, truancy, attempted breaking and entering, theft and two burglaries. At least three of these offenses were committed while he was still on probation for prior convictions. He has been incarcerated on four separate occasions, including his present sentence.
Bailey also has an extensive history of substance abuse and treatment programs. Bailey testified that he received treatment for alcohol abuse at a hospital in Elkhart for approximately one month in 1986. Upon completing the program, he went to a halfway house in Valparaiso for several months. Bailey also testified that while in Valparaiso, he participated in treatment at the Porter Stark Treatment Center. In 1986, Bailey went to the Chemical Dependency Program at Logansport. Bailey testified that he also received treatment that year at the Wabash Valley Hospital, after which he again went to a halfway house. He also stated that he went through treatment at the Wabash Valley Hospital again about one year later. Bailey's probation officer testified that he was living at a halfway house for substance abuse when he began probation with Tippecanoe County.
In November of 1988, Bailey was admitted to the Trinity House for intense outpatient therapy for drug and alcohol abuse. Bailey testified that he completed this therapy in one year. Following his latest incarceration, Bailey was given a diagnostic test which revealed a substance abuse problem.
In addition to his criminal record and history of substance abuse, Bailey's mother testified that she had raised one of Bailey's sons, who was not part of the termination proceedings, since the child was five months old. Bailey's mother stated that Bailey had never contributed to the support or upbringing of the child. While Bailey's mother acknowledged that there had been a brief time when Bailey wanted to take the child back, she stated that she did not permit Bailey to take the child permanently because he failed to secure adequate housing and employment to show enough responsibility to raise the child. She testified that she adopted the child after Bailey failed to show responsibility.
Upon review of the record, we find that the trial court could have concluded the DFC proved by clear and convincing evidence that the conditions prompting the children's placement outside the home would not be remedied or that the continuation of the parent-child relationship poses a threat to the well-being of the children. Despite Bailey's contention that he has his substance abuse under control and wants to "get his life together", there is ample evidence to suggest that Bailey's habitual patterns of conduct pose a substantial probability of future neglect or deprivation of the children. See J.K.C., 470 N.E.2d at 92; D.V.H., 604 N.E.2d at 637. This evidence includes not only Bailey's extensive criminal and substance abuse histories and the relinquishment of one of his sons to his mother, but also the direct testimony of Bailey's mother and the children's caseworker.
Bailey's mother testified that she believed Bailey's long time pattern of broken promises has been significant because of his refusal or inability to change. She acknowledged that Bailey had trouble with substance abuse even though he had participated in numerous treatment programs.
*78 In addition, the children's caseworker testified that Bailey had problems following rules and adapting to society. The caseworker also stated that Bailey had not availed himself of services needed for reunification. Further, the caseworker testified that at the time of trial, there was no indication that there was any reasonable probability that the conditions which resulted in the children's removal and the reasons for placement outside of Bailey's care would change. She also testified that she believed the father/child relationship posed a threat to the children because of his history of substance abuse and criminal activity despite repeated treatment attempts. She also testified that she did not believe these things were going to change in the near future.
Taken together, this testimony established a likelihood that Bailey's substance abuse problems would reoccur and that he would continue to fail to follow through with responsibilities. See S.E.S. v. Grant County Dep't of Welfare, 582 N.E.2d 886 (Ind.Ct. App.1991), trans. granted, 594 N.E.2d 447; Matter of Danforth, 542 N.E.2d 1330, 1331 (Ind.1989) (Stating `[s]urely we need not wait for bleeding victims before we find sufficient evidence of the likelihood of [father's] future incarceration'). Therefore, the trial court did not err when it found the DFC presented clear and convincing evidence that the conditions prompting the children's placement outside the home would not be remedied or that the continuation of the parent-child relationship poses a threat to the well-being of the children.
Bailey also contends the DFC failed to meet its burden of demonstrating that termination was in the best interests of the children. In addition to the testimony set forth above, several witnesses demonstrated why termination was in the best interests of the children.
First, the clinical psychologist who counseled M.B. testified about the effects of long term foster care on the children. She explained that the children needed to have a sense of permanency which is virtually impossible in foster care settings. The anxiety resulting from not knowing where they would be living tomorrow and who would be their parents detracts from their ability to learn the other things children normally learn during their preschool years. The psychologist indicated that the longer the uncertainty continued, the more delayed the children become in psychological development and the more vulnerable they become to long-term personality disorders.
The psychologist also testified that Bailey's children already exhibited symptoms of delayed development and tested low on their developmental evaluations. She testified that terminating Bailey's parental rights was in the children's best interests because they had already been in foster care for two years and would have to remain there for at least another two years before reunification with Bailey was even possible. She testified that this length of time in foster care would result in permanent psychological damage.
Second, the children's caseworker testified that she believed it was in the best interests of the children to terminate Bailey's parental rights because the children needed to be in a permanent and stable home. She testified that the children already had some developmental delays and that postponing permanency would have detrimental effects on their growth.
The caseworker also testified that Bailey had seen P.B. only one time before incarceration and had virtually no bond with him. In fact, Bailey told her at one point that he had no problem with the foster parents adopting P.B. She testified that it could take as many as four or five years from the time of the hearing before reunification would even be a possibility because Bailey would have to get the services he is not able to or unwilling to avail himself of while he is in prison, secure employment, financially provide for the children, find housing, and demonstrate that he is stable and able to stay out of prison. Even Bailey acknowledged that reunification would be a lengthy process and that he would have to complete parenting classes and counseling before he could take the children. The caseworker further testified that given Bailey's history of not following through, the children should not be required to wait the several years needed for Bailey to get himself together since there was a very real *79 possibility that in the end, Bailey would still not be able to take the children.
Finally, the court appointed special advocate (CASA) for the children also testified as to the best interests of the children. She stated that the children needed a sense of permanency and a stable place to live. She further testified that the children had done well in their foster home and that she believed it was important for the children to remain there. She expressed concern about Bailey's pattern of incarceration, his failure to respond to or follow rules, and the fact that he had been on probation or in jail since 1986. She concluded that she believed that it was in the best interests of the children to terminate Bailey's parental rights because she was not aware of any attempt by him to cooperate with the case plan or to obtain any services.
Taken together, this evidence is sufficient to prove by clear and convincing evidence that termination of Bailey's parental rights is in the best interests of the children. See D.V.H., 604 N.E.2d at 638; Draper v. Tippecanoe County Dep't of Public Welfare, 614 N.E.2d 591 (Ind.Ct.App.1993), trans. denied. The testimony clearly established that postponing reunification with Bailey would be seriously detrimental to the children's development, especially since Bailey's early release from prison is not guaranteed. Moreover, the trial court need not wait until the children are irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent-child relationship. See J.K.C., 470 N.E.2d at 93.
Therefore, we find sufficient evidence in the record to support the trial court's finding that the DFC proved the elements of the statute by clear and convincing evidence. See B.R.F. v. Allen County Dep't of Public Welfare, 570 N.E.2d 1350 (Ind.Ct.App.1991). Accordingly, the judgment was not clearly erroneous.

II.
The second issue raised for our review is whether the termination of Bailey's parental rights after his latest criminal convictions constituted a violation of double jeopardy. Specifically, Bailey argues that the termination violates double jeopardy because the termination was based on his current incarceration resulting from his convictions for burglary and theft.
The Double Jeopardy clause of the United States Constitution mandates that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. CONST. amend. V.[1] This clause embodies three separate but related prohibitions: (1) a rule barring reprosecution for the same offense after acquittal; (2) a rule barring reprosecution for the same offense after conviction; and (3) a rule barring multiple punishment for the same offense. Jones v. Thomas, 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989); Elmore v. State, 269 Ind. 532, 534, 382 N.E.2d 893, 894 (1978).
As a general rule, double jeopardy is applicable only to criminal matters and is not applied in civil proceedings. Bryant v. State, 660 N.E.2d 290, 295 (Ind.1995). Departing from this historical rule, however, the U.S. Supreme Court has held in recent years that particular civil actions such as fines and forfeitures can be "jeopardies." Montana Dep't of Revenue v. Kurth Ranch, 511 U.S. 767, ___, 114 S.Ct. 1937, 1941, 128 L.Ed.2d 767 (1994); United States v. Halper, 490 U.S. 435, 448, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989). In determining whether a jeopardy has occurred, the test is whether the civil sanction constitutes "punishment." Kurth Ranch, 511 U.S. at ___, 114 S.Ct. at 1946. When the sanction serves the goal of punishment rather than a remedial purpose, it is a "punishment" and, thus, a "jeopardy" within the Double Jeopardy Clause. Id. The sanction's essence as a punishment can be identified "only by assessing the character of the actual sanctions imposed on the individual *80 by the machinery of the state." Halper, 490 U.S. at 447, 109 S.Ct. at 1901. In Halper, the Supreme Court stated that:
"a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term."
Id. Therefore, a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution. Id. at 449, 109 S.Ct. at 1902.
In determining whether the termination of Bailey's parental rights is a "punishment" and, thus, a jeopardy under double jeopardy analysis, we must examine the purpose of termination proceedings. The law is clear that the purpose of terminating parental rights is not to punish the parent but to protect the best interests of the child. I.C. § 31-6-5-4(c)(3); Lassiter v. Dep't of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), reh'g denied, 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023; Egly v. Blackford County Dep't of Welfare, 592 N.E.2d 1232, 1234 (Ind.1992); J.L.L. v. Madison County Dep't of Public Welfare, 628 N.E.2d 1223, 1226 (Ind.Ct.App.1994). Termination proceedings are designed to protect the normal development of children by providing means of terminating parental relationships which interfere with or damage this development or threaten the well-being of the children. Parental rights are not absolute and must be subordinated to the best interest of their children. I.C. § 31-6-5-4(c)(3); Wardship of J.C. v. Allen County Office of Family and Children, 646 N.E.2d 693 (Ind.Ct.App.1995), reh'g denied, trans. denied; In re V.A., 632 N.E.2d 752, 755 (Ind.Ct.App.1994). Thus, termination proceedings do not have retributive or deterrent purposes. Accordingly, the termination of Bailey's parental rights does not constitute a "punishment" within the purview of double jeopardy analysis. Therefore, the double jeopardy clause was not implicated by the termination of Bailey's parental rights.
Moreover, Bailey failed to prove that the "punishments" he received resulted from the same offense. While Bailey argues that his latest convictions are the sole reason his parental rights were terminated, we have already established in the discussion of the first issue that the termination was supported by substantial evidence other than the latest convictions. Hence, Bailey failed to establish that the termination resulted from the same offense as the criminal punishment. Accordingly, the double jeopardy protections did not apply to the termination.
Therefore, the judgment of the trial court is affirmed in all respects.
AFFIRMED.
KIRSCH, J., concurs.
RUCKER, J., concurs in result.
NOTES
[1] Bailey also cites Article 1, § 14 of the Indiana Constitution, which states that "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. However, Bailey makes no argument or analysis with particular reference to it. Therefore, we limit our discussion to the merits of Bailey's argument under the federal constitution.