## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 31 2018, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Jon P. McCarty
Covington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Matter of the Termination of the Parent-Child Relationship of: N.M., R.M., Jr., L.M., and T.M. (Minor Children)

and

R.B. (Mother) and R.M. (Father),

*Appellants-Respondents,*

v.

May 31, 2018

Court of Appeals Case No. 18A-JT-91

Appeal from the Vermillion Circuit Court

The Honorable Bruce V. Stengel, Judge

Trial Court Cause Nos.
83C01-1703-JT-5
83C01-1703-JT-6
83C01-1703-JT-7
83C01-1703-JT-8

Indiana Department of Child
Services,

*Appellee-Petitioner.*

**Bradford, Judge.**

# Case Summary

R.B. ("Mother") and R.M. ("Father") (collectively, "Parents") appeal the juvenile court's order terminating their parental rights to N.M.; R.M., Jr.; L.M.; and T.M. (collectively, "the Children"). The Indiana Department of Child Services ("DCS") became involved in the Children's lives after receiving reports of drug use by Parents. The Children were subsequently determined to be children in need of services ("CHINS") and Parents were ordered to complete certain services. Parents, however, failed to successfully complete the court-ordered services.

DCS filed a petition seeking the termination of Parents' parental rights to the Children on March 14, 2017. Following an evidentiary hearing, the juvenile court issued an order granting DCS's petition. On appeal, Parents contend that DCS did not provide sufficient evidence to support the termination of their parental rights. They also contend that the trial court's order should be set

aside because DCS failed to provide notice of the evidentiary hearing to a necessary party. We affirm.

# Facts and Procedural History

[3] N.M. was born on July 16, 2009; R.M., Jr., was born on August 13, 2010; L.M. was born on May 21, 2012; and T.M. was born on July 10, 2014. It is uncontested that Parents are the parents of N.M.; R.M., Jr.; and L.M. Parents also presented evidence during the underlying CHINS and termination proceedings indicating that Father is the biological father of T.M. However, on appeal, Parents argue for the first time that Father is not the biological father of T.M.

[4] On September 2, 2015, DCS received a report that Parents were using drugs. Initially, DCS planned to enter into an informal adjustment with Parents. Plans changed, however, after Parents both tested positive for methamphetamine on October 2, 2015. The Children were removed from Parents' care on November 5, 2015, after Parents again both tested positive for methamphetamine. On November 6, 2015, DCS filed petitions alleging that the Children were CHINS. Parents admitted to the allegations set forth in the CHINS petitions. They were subsequently ordered to participate in random drug screens, therapy, and supervised visitation. Parents were also ordered to complete and follow the recommendations of parenting assessments and to avail themselves of all services available during any period of incarceration.

Over the course of approximately the next eighteen months, Parents struggled with sobriety and continued to test positive for drugs and alcohol.

[5] On March 14, 2017, DCS filed petitions seeking the termination of Parents' parental rights to the Children. The juvenile court conducted an evidentiary hearing on DCS's petitions on September 8, 2017. During the evidentiary hearing, DCS presented evidence indicating that Parents had not made significant progress towards reunification and continued to struggle with sobriety. DCS also presented evidence that (1) the Children were doing well in their current foster placements, (2) termination of the Parents' parental rights was in the Children's best interests, and (3) its plan was for the Children to be adopted. For their part, Parents argued that they loved the Children and wanted more time to improve their situations with the hopes of one day being in the position to provide adequate care for the Children. On October 24, 2017, the juvenile court issued an order terminating Parents' parental rights to the Children.

# Discussion and Decision

[6] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parents are unable or unwilling to meet their parental responsibilities. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct.

App. 2001), *trans. denied*. Parental rights, therefore, are not absolute and must be subordinated to the best interests of the children. *Id*. Termination of parental rights is proper where the children's emotional and physical development is threatened. *Id*. The juvenile court need not wait until the children are irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id*.

# I.  Sufficiency of the Evidence

[7] Parents contend that the evidence is insufficient to sustain the termination of their parental rights to the Children. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id*. Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id*. First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id*.

[8] In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it.

*Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

Parents claim that DCS failed to present sufficient evidence to prove by clear and convincing evidence that:

> (B)  that one (1) of the following is true:
> (i) There is a reasonable probability that the conditions that resulted in the child[ren]'s removal or the reasons for placement outside the home of the parents will not be remedied[; and]
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child[ren]….
> (C)  termination is in the best interests of the child[ren.]

Ind. Code § 31-35-2-4(b)(2).[1]

## A.  Indiana Code Section 31-35-2-4(b)(2)(B)

It is well-settled that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find either that (1) the conditions resulting in removal from or continued placement outside the parents' home will not be remedied, (2) the continuation of the parent-child relationship poses a threat to the children, or (3) the children have been adjudicated CHINS on

---

[1] Parents do not dispute that DCS presented sufficient evidence to support the first and fourth elements set forth in Indiana Code section 31-35-2-4(b)(2).

two separate occasions. *See In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, where the juvenile court determines one of the above-mentioned factors has been proven and there is sufficient evidence in the record supporting the juvenile court's determination, it is not necessary for DCS to prove, or for the juvenile court to find, either of the other two factors listed in Indiana Code section 31-34-2-4(b)(2)(B). *See In re S.P.H.*, 806 N.E.2d at 882.

[11] In its order terminating Parents' parental rights to the Children, the trial court found both that the conditions resulting in removal and continued placement outside Parents' home will not be remedied and that the continuation of the parent-child relationship poses a threat to the Children. While Parents challenge the sufficiency of the evidence to sustain the juvenile court's determination that the conditions leading to the Children's removal from their home would not be remedied, they do not raise any challenge to the juvenile court's determination that the continuation of the parent-child relationship also posed a threat to the well-being of the Children. Therefore, juvenile court's order satisfies the requirements of Indiana Code section 31-35-2-4(b)(2)(B).

[12] Be that as it may, DCS presented ample evidence to support the trial court's ruling. The evidence shows that despite claims to the contrary, Parents have continued to test positive for drugs and alcohol. Out of 125 offered drug screens, Father tested positive for alcohol or controlled substances thirty-nine times and was a "no show" forty-nine times. Tr. Vol. II, p. 94. Out of 262 offered drug screens, Mother tested positive for alcohol or controlled substances fifty-three times and was a "no show" sixty-five times. Tr. Vol. II, p. 75.

Although Mother has participated in multiple substance abuse treatment programs, she has shown a pattern of relapse within a couple of weeks of leaving the program. For his part, Father committed a burglary in a stated attempt to go to jail because he "needed to be in a drug free environment." Tr. Vol. II, p. 174. Father pled guilty to this crime and at the time of the evidentiary hearing, Father, who has an extensive criminal record, was awaiting sentencing for his most recent conviction and was facing a term of up to eight years of incarceration. Angela Bullock, the Children's guardian ad litem ("GAL"), questioned the wisdom of Father's decision making, testifying that "I'm not convinced that incarceration is a good plan to help your children or your family, even for drug rehabilitation." Tr. Vol. II, p. 185. In addition, Parents both acknowledged that they were not in a position to care for the Children as of the date of the evidentiary hearing and that they would require more time before they were in a position to do so.

## B. Indiana Code section 31-35-2-4(B)(2)(C)

[13] Parents also argue that DCS failed to establish by clear and convincing evidence that termination of their parental rights is in the Children's best interests. We are mindful that in considering whether termination of parental rights is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride*, 798 N.E.2d at 203. In doing so, the juvenile court must subordinate the interests of the parent to those of the child involved. *Id*. Furthermore, this court has previously determined that the testimony of the case worker, GAL, or a court

appointed special advocate ("CASA") regarding the child's need for permanency supports a finding that termination is in the child's best interests. *Id.*; *see also Matter of M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

[14] Bullock testified that termination of the Parents' parental rights was in the Children's best interests and additionally that it is in the Children's best interests to be placed in a permanent placement. Bullock further testified that the Children "need to have a permanent placement and both parents have somewhat testified today that they don't have a plan right now for those children today and maybe not next month or the next six months[.]" Tr. Vol. II, pp. 184–85. In addition, DCS Family Case Manager Jennifer Hogan testified that the Children were doing well in their current placements and that the plan was for the Children to be adopted. Parents, on the other hand, continued to struggle with stability and sobriety.

[15] The juvenile court did not have to wait until the Children were irreversibly harmed such that their physical, mental, and social development was permanently impaired before terminating Parents' parental rights. *See In re C.M.*, 675 N.E.2d at 1140. DCS presented sufficient evidence to prove that termination of Parents' parental rights is in the Children's best interests. Parents' claim to the contrary merely amounts to an invitation for this court to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

# II. Motion for Relief from Judgment

[16] Parents also contend that the trial court's order should be set aside because a necessary party was not given notice of the evidentiary hearing. In support, Parents cite to Indiana Code section 31-35-2-6.5(c)(1) which provides that a child's parent "shall receive notice of a hearing" in proceedings related to the termination of one's parental rights. The term "parent" includes an alleged father. Ind. Code § 31-9-2-88.

[17] The record reveals that approximately four days after initiating this appeal, Parents filed a Trial Rule 60(B) motion seeking relief from the trial court's judgment. Trial Rule 60(B) provides that "on motion and upon such terms as are just the court may relieve a party … from a judgment … for … any reason justifying relief from the operation of the judgment…." It does not appear that the trial court has ruled on Parents' motion.[2]

[18] In seeking relief from the trial court's judgment, Parents alleged for the first time that DCS had failed to provide notice to a necessary party, *i.e.*, the known biological father of T.M. Parents included declarations made both by Mother and Shane Smith, the alleged biological father of T.M., in their filing. However, nothing in either declaration indicated that Smith had protected his rights by establishing paternity or registering with Indiana's Putative Father

---

[2] The trial court's inaction is likely explained by the fact that this court had assumed jurisdiction of the case before the motion was filed.

Registry. These declarations merely provided that Mother (1) believes that Smith is T.M.'s biological father and (2) claims to have informed DCS of Smith's identity and alleged relationship with T.M. at the beginning of the underlying CHINS proceeding. These declarations, however, were in direct conflict with (1) Mother's testimony during the evidentiary hearing that Father is the biological father of all four of the Children and (2) evidence indicating that Father's paternity of T.M. was established by a paternity affidavit.

[19] DCS alleges that Parents cannot now argue that the trial court's order should be set aside because they invited the potential error by providing testimony and other evidence indicating that Father was the biological father of all four children. "[T]he 'doctrine of invited error is grounded in estoppel,' and forbids a party to 'take advantage of an error that [he] commits, invites, or which is the natural consequence of [his] own neglect or misconduct.'" *Brewington v. State*, 7 N.E.3d 946, 975 (Ind. 2014) (quoting *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005)) (first set of brackets added, second and third set in original). We agree with DCS and conclude that since Parents invited the claimed error, they may not take advantage of it.

[20] Additionally, we find it troubling that despite knowing of Smith's identity and alleged relationship to T.M., Parents stayed silent throughout the proceedings, raising this issue only after the juvenile court ruled against them and they initiated an appeal. Such behavior suggests an attempt by Parents to manipulate the system. If we were to permit such behavior, the children involved—all of whom require stability and finality—would undoubtedly suffer.

The judgment of the juvenile court is affirmed.

Baker, J., and Kirsch, J., concur.